**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **FLOYD JONES,** | |
| **Plaintiff,** | |
| **v.** | **Case No. 1:08-cv-00566 (RMC)** |
| **GLAXO SMITHKLINE, INC.,** | |
| **Defendant.** | |

## <u>DEFENDANT'S MOTION TO DISMISS</u>

Defendant SmithKline Beecham Corporation (incorrectly identified as Glaxo SmithKline, Inc.) (hereafter "Defendant" or "GSK"), by way of undersigned counsel, hereby moves this Court, pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 12(b)(1), or in the alternative Fed. R. Civ. P. 12(b)(6), for an Order dismissing Plaintiff Floyd Jones' (hereafter "Plaintiff" or "Mr. Jones") Complaint, with prejudice.

In support of this Motion to Dismiss, Defendant respectfully directs the Court's attention to the accompanying Memorandum of Points and Authorities. Pursuant to LCvR 7(c), Defendant has attached a proposed order to this Motion to Dismiss.

Dated this 8th day of April, 2008                    Respectfully submitted,


      /s/ H. Scott Johnson, Jr.
Gonzalez, Saggio & Harlan, L.L.P.
H. Scott Johnson, Jr., *Of Counsel*
  D.C. Bar No. 464415
1200 G Street, N.W., Suite 800
Washington, D.C. 20005
(202) 683-8929

Gonzalez, Saggio & Harlan, L.L.P.
Emery K. Harlan
  (Not admitted in the District of Columbia)
Warren E. Buliox
  (Not admitted in the District of Columbia)
225 East Michigan Avenue
Milwaukee, WI 53202
(414) 277-8500

**COUNSEL FOR DEFENDANT**
**SMITHKLINE BEECHAM**
**CORPORATION**

## <u>CERTIFICATE OF SERVICE</u>

I certify that on April 8, 2008, a copy of the foregoing Defendant's Motion to Dismiss and a Proposed Order was sent by electronic mail and first-class mail, postage prepaid to:

> Denise M. Clark, Esq.
> The Law Office of Denise M. Clark
> 1250 Connecticut Avenue, N.W., Suite 200
> Washington, D.C. 20036
> dmclark@benefitcounsel.com

<u>    /s/ H. Scott Johnson, Jr.    </u>
H. Scott Johnson, Jr.

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **FLOYD JONES,** | |
| **Plaintiff,** | |
| **v.** | **Case No. 1:08-cv-00566 (RMC)** |
| **GLAXO SMITHKLINE, INC.,** | |
| **Defendant.** | |

<u>**DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES**</u>
<u>**IN SUPPORT OF ITS MOTION TO DISMISS**</u>

Defendant SmithKline Beecham Corporation (incorrectly identified as Glaxo SmithKline, Inc.) (hereafter "Defendant" or "GSK"), by way of undersigned counsel, hereby moves this Court, pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 12(b)(1), or in the alternative Fed. R. Civ. P. 12(b)(6), for an Order dismissing Plaintiff Floyd Jones' (hereafter "Plaintiff" or "Mr. Jones") Complaint, with prejudice. In support of its Motion to Dismiss, Defendant states as follows:

**I.     INTRODUCTION**

Plaintiff's Complaint should be dismissed for two reasons. First, Plaintiff's pursuit of an administrative complaint with the District of Columbia Office of Human Rights (hereafter "DCOHR") to a decision on the merits precludes him from maintaining the instant action. It is well established that an employee alleging employment discrimination under the District of Columbia Human Rights Act (hereafter "DCHRA") (D.C. Code §2-1401.01 *et seq.*) may elect to bring a complaint before the DCOHR or a

court of competent jurisdiction, but not both. In the above-captioned action, Plaintiff elected to litigate his DCHRA claims to conclusion before the DCOHR and therefore cannot now seek to re-litigate those same claims before this Court, or any other court.[1]

Second, Plaintiff's Complaint must be dismissed as he failed to file the instant action within the one-year statute of limitations for DCHRA claims. Indeed, although Plaintiff's employment was terminated on March 31, 2006, he waited nearly two (2) years to file a Complaint in this Court. Accordingly, Plaintiff's action is time-barred.

For these reasons, each and every one of Plaintiff's claims should be dismissed with prejudice as a matter of law.[2]

## II.   PROCEDURAL HISTORY

On June 19, 2006, Plaintiff filed a complaint of discrimination with the DCOHR (hereafter "Administrative Complaint"). Compl., at ¶ 49. The DCOHR conducted an investigation into the Administrative Complaint and, nearly one year later, issued a "Letter of Determination" on June 11, 2007, finding no probable cause and dismissing the action. Id. at ¶ 50. Shortly thereafter, Plaintiff filed a Request for Reconsideration on July 2, 2007, which Plaintiff alleges was denied on September 4, 2007. Id. [3]

---

[1] As described more fully below, the DCOHR issued a no probable cause finding and dismissed Plaintiff's action as well as addressed Plaintiff's Request for Reconsideration.

[2] Plaintiff's election to litigate his claims with the DCOHR and the fact that his claims are time-barred constitute independent and complete grounds for dismissing this matter pursuant to Fed. R. Civ. P. 12(b)(1), or in the alternative Fed. R. Civ. P. 12(b)(6).

[3] Copies of Plaintiff's Administrative Complaint (Charge of Discrimination), the DCOHR finding of no probable cause (Letter of Determination) and the DCOHR Order regarding reconsideration (Determination on Complainant's Request for Reconsideration) are attached hereto as Exhibit Nos. 1, 2 and 3, respectively. With respect to the Determination on Complainant's Request for Reconsideration, the DCOHR noted that "Complainant's request for reconsideration . . . is **GRANTED**" and that the DCOHR's "'No Probable Cause' determination is **AFFIRMED**." Exhibit No. 3 (emphasis original).

On or about March 6, 2008, Plaintiff commenced a civil action against Defendant in the Superior Court of the District of Columbia (hereafter the "Superior Court Action"). See Compl. Improper service of the Summons and Complaint was attempted on Defendant on March 13, 2008. On or about April 1, 2008, Defendant filed a Notice of Removal from the Superior Court of the District of Columbia to this Court pursuant to 28 U.S.C. §§ 1332 and 1446. Defendant has not served any pleadings in the Superior Court Action and now moves this Court to dismiss the above-captioned matter for the reasons stated herein.

### III.    STATEMENT OF FACTS

Plaintiff began his employment with Defendant on or about June 25, 1995. Compl., at ¶ 7. Plaintiff's employment with Defendant was terminated on or about March 31, 2006, for "'falsifying company records of his reporting activity and expenses in violation of company policy.'" Id. at ¶ 47.

Since the termination of his employment with Defendant, Plaintiff has filed two (2) complaints of discrimination against Defendant, both alleging that Defendant subjected him to discriminatory treatment on the basis of his race in violation of the DCHRA. See id.; see also Exhibit No. 1. In his Administrative Complaint, Plaintiff alleges generally that Defendant discriminated against him by denying him promotions and training opportunities, subjecting him to harassing treatment which was belittling and abusive and terminating his employment. See Exhibit No. 1. Plaintiff alleges that this all occurred between 2001 and March of 2006. Id.

In his Complaint, Plaintiff generally alleges that he was subjected to demeaning and inappropriate comments, subjected to improper investigatory calls to his sales

account contacts, denied and/or discouraged from training opportunities and the like, and wrongfully terminated. See Compl.  Plaintiff alleges that this all occurred between 2005 and March of 2006.  See id. Plaintiff further alleges that between 2004 and 2006, he submitted timely applications for internal promotions and was not promoted. Id. at ¶¶ 30-32.

### IV.    APPLICABLE LEGAL STANDARDS

In resolving a Fed. R. Civ. P. 12(b) motion, courts should accept all factual allegations in the complaint as true. See Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit, 507 U.S. 163, 164 (1993). However, a court is not obligated to ignore any facts set forth in the complaint that undermine the plaintiff's claim or to assign any weight to unsupported conclusions of law.  See Boyd v. O'Neill, 273 F. Supp. 2d 92, 95 (D.D.C. 2003).

In the face of a motion to dismiss brought pursuant to Fed. R. Civ. P. 12(b)(1), a plaintiff bears the burden of demonstrating that the court has jurisdiction to entertain his/her claims. Gustave-Schmidt v. Chao, 226 F. Supp. 2d 191, 195 (D.D.C. 2002). Indeed, "it is well established in this Circuit that a court is not limited to the allegations in the complaint but may consider material outside of the complaint in an effort to determine whether the court has jurisdiction in the case." Id. (citations omitted).

When ruling on a motion pursuant to Fed. R. Civ. P. 12(b)(6), a court "may only consider the facts alleged in the complaint, *documents attached as exhibits or incorporated by reference in the complaint, and matters about which the court may take judicial notice*." Id. at 196 (emphasis added) (citation omitted).[4] A motion under Fed. R.

---

[4] Accordingly, this Court may consider Exhibit Nos. 1, 2 and 3 in deciding Defendant's Motion to Dismiss to the extent it concerns Fed. R. Civ. P. 12(b)(6), as the Complaint has incorporated by reference each

Civ. P. 12(b)(6) challenges whether a plaintiff has properly stated a claim. <u>Kamen v. International Broth. of Elec. Workers (IBEW), AFL-CIO</u>, 505 F.Supp.2d 66, 71 (D.D.C. 2007). A complaint should be dismissed when challenged pursuant to Fed. R. Civ. P. 12(b)(6) when it appears that a plaintiff can prove no set of facts in support of the allegations of the complaint which would entitle him/her to relief. <u>Gustave-Schmidt v. Chao</u>, 226 F. Supp. 2d at 196.

V.    <u>Argument</u>

A.    <u>Plaintiff's Decision to Initially Pursue His Claims of Discrimination at the DCOHR Now Prevents Him from Litigating Those Claims in this Court.</u>

The law upon which Plaintiff grounds each of his claims, the DCHRA, expressly limits a claimant's ability to pursue his claims in court. D.C. Code §2-1403.16(a). Specifically, a claimant who has elected to pursue claims of discrimination before the DCOHR cannot subsequently litigate those claims in court unless the administrative action was withdrawn or dismissed by the agency on grounds of administrative convenience. <u>Id</u>. Here, it is undisputed that prior to commencing this action, Plaintiff filed a complaint of discrimination before the DCOHR. Compl. at ¶ 49; Exhibit No. 1. Further, it is undisputed that the Administrative Complaint was never withdrawn or dismissed for administrative convenience. Compl. at ¶¶ 49-50; Exhibit Nos. 1-3. Rather, by Plaintiff's own admission, the DCOHR conducted an investigation into his Administrative Complaint and issued a no probable cause finding. <u>See</u> Compl. at ¶¶ 49-50; <u>also</u> <u>see</u> Exhibit Nos. 1-2. Hence, as a matter of law, this Court lacks jurisdiction over each and every one of the claims he has filed in the Complaint. Accordingly, Plaintiff's

---

document. <u>See</u> Complaint ¶¶ 49-50.  In any event, this Court may take judicial notice of said documents. Hence, Defendant's Motion to Dismiss may be examined without converting it into a motion for summary judgment.

Complaint should be dismissed pursuant to Fed. R. Civ. P. 12(b)(1) or, in the alternative, Fed. R. Civ. P. 12 (b)(6).

The DCHRA provides, in pertinent part, as follows:

Any person claiming to be aggrieved by an unlawful discriminatory practice shall have a cause of action in any court of competent jurisdiction for damages and such other remedies as may be appropriate, unless such person has filed a complaint hereunder; provided, that where the Office has dismissed such complaint on the grounds of administrative convenience, or where the complainant has withdrawn a complaint, such person shall maintain all rights to bring suit as if no complaint had been filed. No person who maintains, in a court of competent jurisdiction, any action based upon an act which would be an unlawful discriminatory practice under the chapter may file the same complaint with the Office.

D.C. Code §2-1403.16(a). In essence, the DCHRA gives a plaintiff the right to file a complaint with the DCOHR or the right to file suit in a court of competent jurisdiction. See Anderson v. U.S. Safe Deposit Co., et al., 552 A.2d 859, 860 (D.C. 1989). These options are mutually exclusive. Id. Therefore, the filing of a complaint with the DCOHR constitutes an election of remedies and an adverse decision by the DCOHR disposes of the claim. See Simpson v. District of Columbia Office of Human Rights, 597 A.2d 392, 397 (D.C. 1991). Outside of filing a petition for judicial review of the DCOHR's determination, the only way a claimant who files a complaint with the DCOHR can avoid this outcome is if the DCOHR dismisses the complaint prior to reaching a decision on the merits. See id. at 397-399.  As the Anderson court noted:

'Where [the DCOHR] dismisses a complaint on grounds of administrative convenience, or where the complainant withdraws his complaint before an administrative decision is rendered, such person retains the right to file a complaint in court.'

Anderson, 552 A.2d at 860 (citation omitted).

Plaintiff has abandoned his right to file a complaint in court, as he has diligently pursued his DCHRA claims before the DCOHR to a determination on the merits. By his own admission, Plaintiff has exhausted his "administrative" remedies through the DCOHR. See Compl. at ¶¶ 49 and 50.  He filed a complaint with the DCOHR which was dismissed by the DCOHR through a finding of no probable cause after nearly a year of investigation. Id.; Exhibit Nos. 1-2. Following the no probable cause decision, he filed a Request for Reconsideration which was addressed by the DCOHR. Compl. at ¶ 50.  It is clear that Plaintiff elected to fully pursue his DCHRA claims of employment discrimination with the DCOHR. Indeed, his Administrative Complaint was not dismissed for administrative convenience and he did not withdraw it prior to a decision on the merits. See Hogue v. Roach, 967 F. Supp. 7, 10 (D.D.C. 1997) (holding that the plaintiff could not bring an action "in this or any other Court" since the DCOHR "fully investigated the matter and reached a conclusion on the merits rather than dismissing it on grounds of administrative convenience"). Accordingly, in light of the DCHRA's election of remedies provision, Plaintiff cannot now bring suit before this Court or any other court seeking redress for the same claims he sought relief for in his Administrative Complaint.[5] See Parker v. National Corp. For Housing Partnerships, 697 F. Supp. 5, 7 (D.D.C. 1988) (concluding that plaintiff was barred from maintaining her DCHRA complaint in any court because her complaint before the DCOHR was never dismissed on grounds of administrative convenience and she never withdraw her complaint before the

---

[5] While Plaintiff has added more detail allegations to his Complaint, the claims in his Administrative Complaint and Complaint remain essentially the same. That is, Plaintiff claims in both complaints that Defendant subjected him to discriminatory treatment and a harassing/hostile work environment on the basis of his race in violation of the DCHRA.

DCOHR "rendered its administrative decision dismissing plaintiff's claim"); see also Brown v. Capitol Hill Club, 425 A.2d 1309, 1311 (D.C. 1981).

Plaintiff's only other option, then, is to petition the Superior Court of the District of Columbia for judicial review of the DCOHR's ruling. See Simpson, 597 A.2d at 397-399. The instant action against Defendant hardly amounts to such a petition.

In short, Defendant's Motion to Dismiss should be granted because Plaintiff's initial decision to pursue his claims before the DCOHR bars him from now re-litigating those claims in this forum.

**B.** **Plaintiff's Claims Should Also be Dismissed Because They Are Barred by the Applicable Statute of Limitations.**

The DCHRA provides, in pertinent part:

> ***A private cause of action pursuant to this chapter shall be filed in a court of competent jurisdiction within one year of the unlawful discriminatory act, or the discovery thereof***, except that the limitation shall be within 2 years of the unlawful discriminatory act, or the discovery thereof, for complaints of unlawful discrimination in real estate transactions brought pursuant to this chapter or the FHA. The timely filing of a complaint with the Office, or under the administrative procedures established by the Mayor pursuant to §2-1403.03, shall toll the running of the statute of limitations while the complaint is pending.

D.C. Code §2-1403.16(a) (emphasis added).

Here, Plaintiff's employment with Defendant was terminated on March 31, 2006. Compl. at ¶ 47. As such, the Complaint, filed on or about March 6, 2008, is well outside the one-year period of limitations placed on claims under the DCHRA.

In the event Plaintiff attempts to argue that the statute of limitations was tolled while his Administrative Complaint was pending, Defendant respectfully directs the Court's attention to its August 2007 decision in Kamen v. International Broth. of Elec. Workers (IBEW), AFL-CIO, 505 F.Supp.2d 66 (D.D.C. 2007). Therein, this Court held

that the filing of an administrative complaint before the DCOHR does not toll the DCHRA statute of limitations. Id. at 75-77.

In Kamen, the plaintiff filed a timely complaint with the DCOHR alleging violations of the DCHRA. Id. Thereafter, he withdrew his complaint with the DCOHR, giving him the right to file suit in court, which he did on June 6, 2006. See id. at 71 and 75. Since the plaintiff had been discharged back in December of 2004, the defendants in Kamen argued that plaintiff's DCHRA claims were time-barred, citing, among other cases, Anderson, 552 A.2d at 863, for the proposition that the DCHRA statute of limitations was not tolled. See Kamen, 505 F.Supp.2d at 75-76. However, the plaintiff argued that the filing of an administrative complaint does in fact toll the limitations period. Kamen, 505 F.Supp.2d at 75-76. In resolving the issue, this Court noted:

> The only problem with Mr. Kamen's argument, which understandably relies on *Vitikacs*, is that the D.C. Court of Appeals had already held, in [Anderson], that filing an administrative complaint with the DCOHR does not toll the DCHRA statue of limitations period of one year to file a court complaint.

Id.

The instant matter is analogous to Kamen in that the filing of a complaint with the DCOHR does not toll the period of limitations and make an otherwise untimely DCHRA claim timely. Since Plaintiff here was discharged back on March 31, 2006, the filing of this Complaint alleging violations of the DCHRA comes nearly two (2) years after the most recent alleged discriminatory act and is therefore time-barred. See Compl. at ¶ 47.

Even assuming, *arguendo*, that the statute of limitations was in fact tolled while Plaintiff's Administrative Complaint was pending, most of the allegations in the Complaint are time-barred nonetheless. Specifically, Plaintiff was discharged on March 31, 2006. Id. at ¶ 47. Eighty (80) days later, on June 19, 2006, he filed his Administrative

Complaint. <u>Id</u>. at ¶ 49. Plaintiff's Administrative Complaint was disposed of through a no probable cause finding on June 11, 2007, and two hundred and sixty nine (269) days later, on or about March 6, 2008, he filed this Complaint. <u>Id</u>. at ¶¶ 49-50. Hence, three hundred and forty nine (349) days have passed (taking into consideration any possible alleged tolling period) since Plaintiff was discharged. <u>Id</u>. at ¶¶ 47-50. Any alleged discriminatory activity that took place on or before March 14, 2006, then, is time-barred.[6] This includes, but is not limited to, the allegedly improper "investigatory calls to Plaintiff's sale account contacts" Plaintiff alleges he learned about in February of 2006 (<u>id</u>. at ¶¶ 20-24); the alleged denial of training activities in June of 2005 (<u>id</u>. at ¶ 25); and any other alleged acts of discrimination that took place or he became aware of on or prior to March 14, 2006, which according to the Complaint appears to be everything except for the termination of his employment (<u>see</u> <u>generally</u> <u>id</u>.). Accordingly, in the event Plaintiff is able to somehow demonstrate that his DCHRA claims were tolled during the pendency of his Administrative Complaint, Defendant moves to dismiss, with prejudice, all discrete acts of discrimination that allegedly occurred (or Plaintiff discovered) on or before March 14, 2006.

**VI.    CONCLUSION**

For all reasons set forth above, Defendant SmithKline Beecham Corporation respectfully requests that this Court grant its Motion to Dismiss and dismiss this matter,

---

[6] Three hundred and sixty five (365) days prior to the filing of the Complaint (taking into consideration any possible alleged tolling period) is March 15, 2006.

with prejudice.

Dated this 8th day of April, 2008.                Respectfully submitted,


  /s/ H. Scott Johnson, Jr.
Gonzalez, Saggio & Harlan, L.L.P.
H. Scott Johnson, Jr., *Of Counsel*
 D.C. Bar No. 464415
1200 G Street, N.W., Suite 800
Washington, D.C. 20005
(202) 683-8929


Gonzalez, Saggio & Harlan, L.L.P.
Emery K. Harlan
 (Not admitted in the District of Columbia)
Warren E. Buliox
 (Not admitted in the District of Columbia)
225 East Michigan Avenue
Milwaukee, WI 53202
(414) 277-8500

**COUNSEL FOR DEFENDANT
SMITHKLINE BEECHAM
CORPORATION**

## **CERTIFICATE OF SERVICE**

I certify that on April 8, 2008, a copy of the foregoing Defendant's Memorandum of Points and Authorities In Support of Its Motion to Dismiss was sent by electronic mail and first-class mail, postage prepaid to:

> Denise M. Clark, Esq.
> The Law Office of Denise M. Clark
> 1250 Connecticut Avenue, N.W., Suite 200
> Washington, D.C. 20036
> dmclark@benefitcounsel.com

<br>

_____/s/ H. Scott Johnson, Jr._____
H. Scott Johnson, Jr.

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**FLOYD JONES,**

       **Plaintiff,**

**v.**

**GLAXO SMITHKLINE, INC.,**

       **Defendant.**

**Case No. 1:08-cv-00566 (RMC)**

## [PROPOSED] ORDER

THIS MATTER having come before the Court on Defendant's Motion To Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1), or in the alternative Federal Rule of Civil Procedure 12(b)(6), and any Opposition thereto, and the Court having considered the matter, it is hereby

**ORDERED** that Defendant's Motion to Dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(1), or in the alternative Federal Rule of Civil Procedure 12(b)(6), be and hereby is **GRANTED**; and it is

**FURTHER ORDERED** that judgment in this action be and hereby is entered in favor of Defendant, and that this case is **DISMISSED WITH PREJUDICE**.

**SO ORDERED.**

ENTERED this _____ day of _____, 2008.

_____
Rosemary M. Collyer
United States District Judge

Copies to:

H. Scott Johnson, Jr., Esq.
Gonzalez, Saggio & Harlan, L.L.P.
1200 G Street, N.W., Suite 800
Washington, D.C. 20005

and

Emery K. Harlan, Esq.
Warren E. Buliox, Esq.
Gonzalez, Saggio & Harlan, L.L.P.
225 East Michigan Avenue
Milwaukee, WI 53202

and

Denise M. Clark, Esq.
The Law Office of Denise M. Clark
1250 Connecticut Avenue, N.W., Suite 200
Washington, D.C. 20036

# EXHIBIT 1

EOC Form 5 (5/01)

# CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form.

| Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|
| [X] FEPA | 06-307-P(CN) |
| [X] EEOC | 10C-2006-02855 |

| D.C. Office Of Human Rights | | and EEOC |
|---|---|---|
| *State or local Agency, if any* | | |

| Name *(indicate Mr., Ms., Mrs.)* | Home Phone *(Incl. Area Code)* | Date of Birth |
|---|---|---|
| Floyd Jones | (301) 749-2038 | 05-18-1967 |

| Street Address | City, State and ZIP Code | |
|---|---|---|
| 307 Stony Hill Court, Fort Washington, MD 20744 | | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. *(If more than two, list under PARTICULARS below.)*

| Name | No. Employees, Members | Phone No. *(Include Area Code)* |
|---|---|---|
| GLAXO SMITHELINE | Unknown | (202) 332-9300 |

| Street Address | City, State and ZIP Code | |
|---|---|---|
| 1500 K Street, NW, Washington, DC 20024 | | |

| Name | No. Employees, Members | Phone No. *(Include Area Code)* |
|---|---|---|
| | | |

| Street Address | City, State and ZIP Code | |
|---|---|---|
| | | |

DISCRIMINATION BASED ON *(Check appropriate box(es).)*

[X] RACE  [ ] COLOR  [X] SEX  [ ] RELIGION  [ ] NATIONAL ORIGIN
[ ] RETALIATION  [ ] AGE  [ ] DISABILITY  [ ] OTHER *(Specify below.)*

| DATE(S) DISCRIMINATION TOOK PLACE | |
|---|---|
| Earliest | Latest |
| 01-01-2001 | 03-30-2006 |
| | [ ] CONTINUING ACTION |

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s)):*

I believe that I have been discriminated against on the bases of my race (Black) and sex (Male) in the terms, conditions, privileges, which led to a hostile working environment and the involuntary discharge of my employment because:

In June 1995, Respondent hired me as a Pharmaceutical Consultant and I performed my duties in a satisfactorily manner.

## DENIAL OF PROMOTION

From January 2001 to January 2006, I applied and was subsequently denied any promotions that I applied for with Respondent. However, other employees (white, male and female), with less experience than me were granted promotions.

## DENIAL OF TRAINING

In June 2005, my supervisor (white, female) made me aware that I needed to improve my work performance. In response, I requested training that would enable me to perform my duties more efficiently. However, my supervisor denied me the opportunity to take advantage of trainings but allowed and encouraged other employees (white, female and male) to attend such trainings.

## HARASSMENT

From January 2005 to March 2006, my supervisor would speak to me in a belittling manner and constantly knit pick with my work performance. In August 2005, during a phone conversation, my supervisor advised me that I am not performing at the level of my co-workers (white, females). However, my colleagues were selling far less products of what I produce. On several occasions my supervisor would verbally abuse me and single me out as

the person responsible for the de   : in business. However, my supervisor   uld not subject this type of treatment to other counterparts (white, females).

## TERMINATION

On March 30, 2006, Respondent terminated for employment for gross misconduct. Prior to the termination of my employment, I never received any disciplinary actions. My supervisor did not provide any information about suggestions to help me meet her requirements for improvement.

Therefore, I charge Respondent with unlawful discriminatory actions on the bases of my sex and race in the violation of the D.C. Human Rights Act of 1977, as amended and Title VII of the Civil Rights Act of 1964, as amended. I have not commenced any action, civil, criminal or administrative, other than: CROSS FILIING WITH EEOC.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements<br><br>**Melissa Sharpe-Jones** |
|---|---|
| I declare under penalty of perjury that the above is true and correct.<br><br>6/21/06<br>Date     Charging Party Signature | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT   Melissa C. Sharpe<br>Notary Public, District of Columbia<br>My Commission Expires 12-14-2006<br>SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE<br>(month, day, year) |

OC FORM 131-A (5/01)

## U.S. Equal Employment Opportunity Commission

| | PERSON FILING CHARGE |
|---|---|
| GLAXO SMITHELINE<br>1500 K Street, Nw<br>Washington, DC 20024 | Floyd Jones |
| | THIS PERSON (check one or both)<br>[X] Claims To Be Aggrieved<br>[ ] Is Filing on Behalf of Other(s) |
| | EEOC CHARGE NO.<br>**10C-2006-02855** |
| | FEPA CHARGE NO.<br>06-307-P(CN) |

## NOTICE OF CHARGE OF DISCRIMINATION IN JURISDICTION WHERE A FEP AGENCY WILL INITIALLY PROCESS
*(See the enclosed for additional information)*

THIS IS NOTICE THAT A CHARGE OF EMPLOYMENT DISCRIMINATION UNDER

[X] Title VII of the Civil Rights Act                [ ] The Americans with Disabilities Act

[ ] The Age Discrimination in Employment Act      [ ] The Equal Pay Act

HAS BEEN RECEIVED BY

[ ] The EEOC and sent for initial processing to _____

                                                            *(FEP Agency)*

[X] The    **D.C. Office Of Human Rights**                        and sent to EEOC for dual filing purposes.

                    *(FEP Agency)*

While EEOC has jurisdiction (upon expiration of any deferral requirement if this is a Title VII or ADA charge) to investigation this charge, EEOC may suspend its investigation and await the issuance of the Agency's final findings and orders. These findings and orders will be given weight by EEOC in making its own determination as to whether reasonable cause exists to believe that discrimination has occurred

You are therefore encouraged to cooperate fully with the Agency. All facts and evidence provided by you to the Agency will be considered by EEOC when it reviews the Agency's final findings and orders. In many cases EEOC will take no further action, thereby avoiding the necessity of an investigation by both the Agency and EEOC. This likelihood is increased by your active cooperation with the Agency

As a party to the charge, you may request that EEOC review the final findings and orders of the above-named Agency. For such a request to be honored, you must notify EEOC in writing within 15 days of your receipt of the Agency's final decision and order. If the Agency terminates its proceedings without issuing a final finding and order, you will be contacted further by EEOC. Regardless of whether the Agency or EEOC processes the charge, the Recordkeeping and Non-Retaliation provisions of the statutes as explained in the enclosed information sheet apply.

For further correspondence on this matter, please use the charge number(s) shown above.

Enclosure(s): Copy of Charge

CIRCUMSTANCES OF ALLEGED DISCRIMINATION

[X] RACE  [ ] COLOR  [X] SEX  [ ] RELIGION  [ ] NATIONAL ORIGIN  [ ] AGE  [ ] DISABILITY  [ ] RETALIATION  [ ] OTHER

See enclosed copy of charge of discrimination.

| Date | Name / Title of Authorized Official | Signature |
|---|---|---|
| July 06, 2006 | Dana Hutter,<br>Director | |

# EXHIBIT 2

**(Part A)**

**GOVERNMENT OF THE DISTRICT OF COLUMBIA**
Office of Human Rights



Judiciary Square Office
441 4th Street, NW, Suite 570N
Washington, DC 20001
Phone: (202) 727-4559  Fax: (202) 727-9589

Penn Branch Office
3220 Pennsylvania Avenue, SE, 1st Fl.
Washington, DC 20020
Phone: (202) 727-4559  Fax: (202) 645-6390

## LETTER OF DETERMINATION

June 11, 2007

Mr. Floyd Jones
307 Stony Hill Court
Fort Washington, Maryland   20744

Reference:    ***Floyd Jones v. GlaxoSmithKline***
***Docket No.: 06-307-P (CN)***
***EEOC No.: 10C-2006-02855***

Dear Mr. Jones:

The Office of Human Rights (hereinafter "OHR") has completed the investigation of the above referenced complaint. You are referred to as "**COMPLAINANT**."
GlaxoSmithKline is referred to as "**RESPONDENT**."

### ISSUE(S) PRESENTED

1. Whether Respondent subjected Complainant to disparate treatment in the award of promotions on the bases of his sex (male), political affiliation (Independent), race (Black) when Respondent failed to select Complainant for promotion from January 2001 to January 2006, but other employees (White, male and female, unknown political affiliation) with less experience were selected for promotions.

2. Whether Respondent subjected Complainant to disparate treatment on the bases of his sex (male), race (Black) and political affiliations (Independent) in June 2005 when Respondent denied Complainant permission to attend trainings, but other employees (White, female and male, unknown political affiliation) were permitted to attend trainings.

3. Whether Respondent subjected Complainant to a hostile work environment on the bases of his race (Black), sex (male) and political affiliation (Independent) when, from January 2005 to March 2006, Complainant's supervisor (White, female, Republican): 1) spoke to Complainant in a belittling manner; 2) constantly nit-picked with Complainant's work performance accusing Complainant of not

performing as well as his coworkers, yet Complainant's coworkers sold less product than Complainant; and 3) verbally abused and singled out Complainant as being responsible for the decline in the company.

4. Whether Respondent subjected Complainant to disparate treatment on the bases of his race (Black), sex (male) and political affiliation (Independent) on March 30, 2006 when Respondent terminated Complainant for gross misconduct although, prior to his termination, he never received any other disciplinary actions.

## JURISDICTION

Respondent is located at 1500 K Street, N.W., Washington, DC 20024. The alleged discriminatory acts occurred at Respondent's location in the District of Columbia. Respondent is not exempt for any known reasons from the laws of the District of Columbia prohibiting unlawful discrimination. Therefore, Respondent is subject to the enforcement jurisdiction of the OHR.

## FINDINGS OF FACT

The OHR's finding of facts were obtained from the following: (1) Complainant's sworn statement; (2) Respondent's Position Statement; (3) Respondent's sworn response to the OHR's Request for Documents; and (4) Complainant's rebuttal.

### Denial of Promotion

According to Complainant, from January 2001 to January 2006, he applied for and was denied promotion to positions with Respondent; however, other employees (White, male and female, unknown political affiliation) with far less experience were selected for promotions.

Respondent reports that from January 2001 to February 2006, Complainant applied for, but was not selected for a number of positions and denies that the decision against selecting Complainant was based on his race, gender or political affiliation. Respondent reveals, according to its records, that Complainant applied for a promotion to District Sales Manager, Area Development Manager and Field Development Trainer on fifteen (15) different job postings between 2003 and 2006. Of the fifteen (15) openings, Respondent contends that Complainant was interviewed for five (5), but was not selected for any of the positions because the selected candidates were better qualified than Complainant. Also, Respondent contends that the Regional Sales Director was aware of Complainant's interest in a promotion and was very supportive of his efforts to move into a District Sales Manager role. Respondent contends that the Regional Sales Director offered Complainant advice on interviewing and recommended that he practice with mock interviews.

*Floyd Jones v. Glax oSmithKline*
*Docket No.: 06-307-P (CN)*
*EEOC No.: 10C-2006-02855*
*Page 3 of 22*

Complainant rebuts by stating that Respondent disregarded two-thirds of the higher positions for which he applied. In rebuttal, Complainant asserts that the hiring manager always had someone else in mind for the position and it was usually a White male or female. Complainant also states in rebuttal that the hiring manager provided him with feedback that was inconsistent and included a recommendation that Complainant obtain a rotation in the corporate office or regional office to gain more experience. Complainant contends that he spoke to several managers about how to obtain a rotation. Complainant asserts that the product managers and regional managers decided that other candidates were more qualified than he although most had not completed the Emerging Leader Development Program.

## Denial of Training

Complainant alleges that in June 2005, his supervisor (White, female, Republican) informed him that he needed to improve his work performance. In response, Complainant states that he requested training that would enable him to perform his duties more efficiently. Complainant contends that his supervisor denied him the opportunity to take advantage of trainings, but allowed and encouraged other employees (White, female and male) to attend such trainings.

According to Respondent, Complainant was offered training on numerous occasions, but did not avail himself of those trainings. Also, Respondent asserts that in December 2004, its Oncology business reorganized and separated the sales functions into Oncology & Acute Care. As a result of the restructure, Respondent explains that a number of employees were displaced and others were assigned new roles. However, Respondent contends that Complainant was not among those employees whose employment was displaced.

Instead, Respondent points out that Complainant was assigned to the Acute Care function. According to Respondent, it was at that time that Complainant's supervisor assumed leadership for Complainant's sales team. Respondent contends that Complainant was placed in Acute Care (surgical sales) which is institutional sales, i.e., selling to hospitals. Respondent states that by fourth quarter of 2005, Complainant's supervisor recognized that Complainant needed assistance in business planning and targeting, developing sales strategy, and building relationships with customers. With that realization, Complainant's supervisor discussed her assessment with Complainant and coached him in these skill areas. Moreover, Respondent alleges that Complainant's supervisor arranged for Complainant to spend a day with the sales region's Area Development Manager in an effort to develop Complainant's skills in sales strategy with a goal of increasing sales. Respondent also claims that Complainant's supervisor provided Complainant with every opportunity to increase these key selling skills.

In addition, Respondent states that it had other training resources in place, but Complainant did not take advantage of any of the training offered to him. As an example, Respondent proffers its intranet website, my Learning, as a resource for training

*Floyd Jones v. Glax oSmithKline*
*Docket No.: 06-307-P (CN)*
*EEOC No.: 10C-2006-02855*
*Page 4 of 22*

and development opportunities. Respondent contends that its Oncology & Acute Care portion of that website is a key resource for field sales employees. Further, Respondent adds that the website provides information about various training programs within the company in order for all field sales employees, like Complainant, to develop their practical skills. More specifically, Respondent contends that formal training is available to all Oncology & Acute Care sales representatives in the area of product training and is held periodically throughout the year. Lastly, Respondent declares that Complainant never specifically requested training from management or objected to a lack of training. Respondent adds that Complainant was offered the same opportunities as other similarly situated employees and was not denied training on the bases of his race, gender or political affiliation.

In rebuttal, Complainant insists that he was never offered any additional training. He asserts that since he did not need any remedial or refresher training, he was not considered a candidate for that particular type of training. Complainant avers that during February 2004, he began a graduate program to obtain his Masters of Business Administration degree. He states that his direct supervisor and other members of the management team supported him in that endeavor. Complainant explains that reorganization of the Oncology business unit was done based on seniority and he was not displaced because he had more years than several of his counterparts at the time. Also, Complainant relates that he came under the supervision of his most recent supervisor in the role of an Account Manager- Surgical after a year of Emerging Markets. He states that his supervisor did not consider his past positions to be important and she informed him that she was going to "whip him into shape" to help the team achieve top sales honors. Complainant contends that his conversation with his supervisor was awkward because he had been named by Respondent in 2003 as a top national salesperson. In addition, Complainant states that, at the time, he had won four (4) top awards in the past five (5) years.

Complainant asserts that he took full advantage of additional training by enrolling in a graduate business program with a concentration in Marking and Management. Complainant claims that he completed all required certifications and assessments with a favorable score and he was never advised to take any training outside of what was required. On several occasions, Complainant contends that he asked his supervisor if he could spend a day in the field with a District Sales Manager or participate in a temporary situation to aid himself in learning more about the responsibilities and role. Complainant asserts that he participated in the first class of the Emerging Leaders Development program, which is Respondent's Management Training Program. Complainant states that his supervisor only provided criticism about potential promotions and she repeatedly told Complainant that she did not know him and could not vouch for him to be promoted.[1]

---

[1] Complainant was under the aforementioned supervisor's directive from December 2004 to March 2006.

## Hostile Work Environment

According to Complainant, from January 2005 to March 2006, his supervisor spoke to him in a belittling manner and constantly "nit picked" with him about his work performance. Complainant also alleges that in August 2005, during a phone conversation, his supervisor advised him that he was not performing at the level of his co-workers (white, female). However, Complainant states that his colleagues were selling far less products than he. Complainant contends that on several occasions, his supervisor verbally abused him and singled him out as the person responsible for the decline of business. Complainant adds that his supervisor did not subject that type of treatment on his counterparts (white, females).

Respondent reports that the Human Resources Director was contacted on March 17, 2006 by Complainant who stated that he was inquiring about "his rights" because he was not on a "good foot" with his manager. According to Respondent, Complainant complained that his supervisor said demeaning things to him. Respondent claims that this was the first time that Complainant brought forward that complaint to Human Resources. When the Human Resources Director asked Complainant for specific examples of "demeaning things," Respondent asserts that Complainant could not provide specific examples, but said that his supervisor's tone was demeaning. Respondent contends that Complainant concluded the conversation with the Human Resources Director by stating that he did not know if it was harassment, but his career was being put "on hold." Respondent also claims that Complainant never mentioned that he felt he was being discriminated against on the bases of his race, gender or political affiliation during the phone call.

Respondent denies that Complainant's supervisor abused him or singled him out as the employee responsible for any decline in business. Respondent states that Complainant's supervisor uses a practice of posting the sales numbers for every team member during team meetings in order to communicate sales performance to the team. Respondent contends that the supervisor posts every team members' sales numbers, regardless of race, gender or political affiliation and never specifically singled out Complainant from the rest of the team. Respondent explains that Complainant's supervisor gives feedback to each team member to reward good performance and to motivate the team and increase sales performance.

Finally, Respondent denies that its Regional Sales Manager probed to determine Complainant's personal and political views. Respondent contends that Complainant's supervisor recalls speaking to Complainant on one occasion about her voting practice which is to vote issues, not a political party. Respondent states that she does not remember telling Complainant how she voted in 2005. In fact, Respondent declares that the supervisor is uncertain about whether she voted in 2005.

In rebuttal, Complainant denies that he used the term "good foot" to describe the lack of communication with his supervisor. He asserts that he spoke with the Human Resources

*Floyd Jones v. GlaxoSmithKline*
*Docket No.: 06-307-P (CN)*
*EEOC No.: 10C-2006-02855*
*Page 6 of 22*

Director so that she could document the "current unfairness that he was receiving."[2]
Complainant claims that the Human Resources Director advised him that Respondent's
policy was to re-advise employees of the practices of Respondent with regard to
documentation. He explained that the Human Resources Director stated that the cases
will usually be reprimanded. Complainant asserts that he provided the Human Resources
Director with demeaning things that he was subjected to by his supervisor and he
informed the Human Resources Director of a conversation between himself and his
supervisor where she described him as being inferior to his white female counterparts.
He claims that he related to the Human Resources Director about his supervisor calling
him "bizarre" and the lack of decorum she exhibited in a public place when addressing
him.

In addition, Complainant contends that he provided the Human Resources Director with
information about his supervisor contacting several of his accounts to inquire about his
professionalism. Also, Complainant claims that she made some disparaging remarks to
the staff of a client such as "I am not sure if he is even calling on your account" and "he
is putting down lunches that he is not conducting."

Complainant reports that the intimidation began after the first part of 2005 when his
supervisor was ranked as the number one (1) manager amongst her peers in the Oncology
Division. Complainant asserts that his supervisor expressed to him directly that she
wanted to win the top award.

Complainant contends that his supervisor provided extensive conversations to him about
how she knew of a candidate who was running for Governor of the State of Virginia and
how her husband invited him over to their home. Complainant insists that his supervisor
continuously utilized those comments to find out about Complainant's political
affiliation. For example, Complainant states that his supervisor could be discussing
customer relations and she would change the subject to politics to avoid hearing
Complainant's thoughts and ideas about an account. Afterwards, Complainant asserts
that she would make it clear to Complainant that she was a Republican and that the
candidate that was running for Governor was the first Democrat that she had ever
supported. Complainant claims that his supervisor made assumptions that he was
Democratic and would inquire as to why he would not consider a change in parties
because of his position with a pharmaceutical company.

Furthermore, Complainant contends that his supervisor would always tell him how
wonderful it is to be a Republican supporter because "they have done a lot of good for the
country." Complainant explains that he attempted to express to his supervisor that there
is good and bad in both parties and his supervisor quickly asserted that he must be a
Democrat for making that type of comment.

---

[2] Complainant did not reveal to the OHR investigator that he made the Human Resource's Director aware
that he was being discriminated against by his supervisor.

*Floyd Jones v. Glax oSmithKline*
*Docket No.: 06-307-P (CN)*
*EEOC No.: 10C-2006-02855*
*Page 7 of 22*

## Termination

According to Complainant, on March 30, 2006, Respondent terminated his employment for gross misconduct. Complainant alleges that prior to the termination of his employment; he never received any disciplinary actions. In addition, Complainant claims that his supervisor never provided any information to help Complainant meet his supervisor's requirements for improvement.

Respondent answers by stating that Complainant was terminated, effective March 31, 2006, for falsifying Company records of his reporting activity and expenses in violation of Company policy. Respondent alleges that Complainant reported a lunch expense for himself and a client on February 18, 2006 at Ruby Tuesday Restaurant. Respondent states that when asked, the client stated that he had never been to a Ruby Tuesday Restaurant with Complainant. The reasons for Complainant's termination were documented in a Separation Notice dated March 30, 2006 and given to him on that date.

Complainant asserts that he purchased food items for one of Respondent's clients and left those items at the client's office after a brief conversation with the individual on February 18, 2006. Complainant explains that the client was unable to speak with him longer because he was attending to his patients and he had a meeting to attend. Complainant also adds that he had several lunches[3] with that client prior to the February 18, 2006 meeting. Complainant states that he provided the information to his immediate supervisor and she has accepted it in the past.

In addition, Complainant contends that on October 27, 2005, he was directed by his supervisor to add names to a Speaker Dinner list to satisfy Respondent's $100 per attendee policy. Complainant asserts that the dinner list incident is similar to the lunch incident for which he was terminated.

## Policies

Respondent has the following policies:

- *EEO Policy* which prohibits discrimination on the bases of an employee's or applicant's race, sex or political affiliation; "the company is to recruit, hire, train, develop, and promote persons in all job classifications without regard to race, color, religion, gender, sexual orientation, gender identity or expression, age, national origin, disability or status as a disable veteran or veteran of the Vietnam era or their eligible veteran status."

- "*Harassment Free Workplace Policy*" that provides guidance to employees on how to report complaints of harassment. Employees may report complaints to management, Human Resources or through an anonymous Compliance help line.

---

[3] Complainant contends that he had meetings with that client during November 2005 to February 2006.

This policy is available on Respondent's intranet website and all employees receive training on the policy.

- *Employee Conduct Policy* discloses that misrepresentation of expenses by submitting a false expense report is a violation so serious that it warrants immediate discharge.

- *U.S. Travel and Expense Policy* states that violations of the policies could result in discipline, up to and including termination of employment.

## Personnel Files and Documents

The OHR record contains the following files and documents:

- Complainant's 2004 Field Coaching/MBO Assessment Report containing comments from the Director proclaiming that Complainant had an overall great start into 2003. The Director concluded that she was appreciative of Complainant's commitment in supporting the region's goals.[4]

- Complainant's "Performance & Development Planning – Year 2003 Assessment" dated April 5, 2004 containing the following comment from his supervisor: "You were above the national average for [product name], and [product name] share and volume, and in the bottom half of the nation with [product name] and [product name]. Your growth was in the top half of the nation for [product name] and [product name]. Outstanding job on [product name] as you ranked in the top ten for growth. Overall, you did a great job of managing the portfolio this year."

- Complainant's Resume

- Complainant's Expense Report dated October 30, 2005 for an event that accommodated four (4) customers. The total expense for this bill was $1,774.03 (One Thousand Seven Hundred Seventy Four Dollars and Three Cents).[5]

- An Expense Report dated March 24, 2006 submitted by Complainant for reimbursement for a lunch with a client on February 16, 2006 at a restaurant.[6]

---

[4] This document was not signed by Complainant or his supervisor during that time period. In addition, Complainant submitted another Field Coaching/MBO Assessment Report, in which the Director expressed appreciation for Complainant's "professionalism and remaining focused on the business during the alignment process." However, neither was that document dated or signed by Complainant or Respondent.
[5] According to Complainant, the Expense Policy states that if an employee hosts a Dinner Party, the cost for each attendee may not exceed $100. Complainant alleges that his supervisor directed him to indicate that there were 10 attendees for a dinner party when there were only 4 attendees present. However, in the Expense and Travel policy that information is not revealed.
[6] According to Respondent, Complainant stated in the report that he had lunch on that date with an Orthopedic surgeon, for the purpose of discussing the use of one of Respondent's products. Respondent alleges that as part of the typical expense reporting process, Complainant's supervisor reviewed the

*Floyd Jones v. Glax oSmithKline*
*Docket No.: 06-307-P (CN)*
*EEOC No.: 10C-2006-02855*
*Page 9 of 22*

- A Sales Receipt for a lunch from the aforementioned restaurant dated February 16, 2006.

- Complainant's Separation Notice, dated, March 30, 2006, notifying Complainant that he had violated Respondent's Conduct Policy by submitting false expense reports and false call reports to the company.

The following graph depicts the selected candidates for each of the positions applied for by Complainant during the relevant time period.[7]

| SELECTED CANDIDATE | POSITION | RACE | SEX |
|---|---|---|---|
| Selected Candidate #1 | District Sales Manager | White | Male |
| Selected Candidate #2 | Area Development Manager-Oncology | Hispanic | Male |
| Selected Candidate #3 | District Sales Manager | Black | Male |
| Selected Candidate #4 | Area Development Manager-Oncology | White | Male |
| Selected Candidate #5 | Field Development Trainer | Black | Male |
| Selected Candidate #6 | Field Development Trainer | White | Male |
| Selected Candidate #7 | District Sales Manager | White | Male |

**Interviews**

The OHR investigator conducted the following interviews:

The Human Resources Director (White, female, no political affiliation), stated that during a conversation with Complainant on March 17, 2006, Complainant indicated to her that his career was being held back because he has not been selected for any positions that he applied for outside of the business unit. She indicated that Complainant never stated that he believed he was not promoted because of his race, sex, or political affiliation.

---

expense report and actually approved it initially, as if there was nothing on the face of the report that raised suspicion. However, Respondent contends that after a particularly bizarre interaction with Complainant on March 13, 2006, Complainant's supervisor went back and looked at the expense report again. Respondent states that Complainant's supervisor compared it to the records Complainant had submitted documenting his calls for February 16, 2006 and noticed that Complainant had not listed any call to the Orthopedic surgeon. Respondent alleges that Complainant's supervisor then called the Orthopedic surgeon's office and confirmed that Complainant had not gone to lunch with the surgeon and has never been to that particular restaurant with the surgeon.

[7] Documentation reveals that each candidate met the required qualifications for their position. In addition, Respondent states that it does not keep records on an employee's or an applicant's political status.

*Floyd Jones v. Glax oSmithKline*
*Docket No.: 06-307-P (CN)*
*EEOC No.: 10C-2006-02855*
*Page 10 of 22*

The Regional Sales Director (female, White, no political affiliation) stated that Complainant never made her aware of any training that he needed in order to enhance his sales skills. This individual also stated that Complainant was given the opportunity to spend a day shadowing another employee. She denied that she ever made any discriminatory comments to Complainant regarding his race, sex or political affiliation and denied that she ever singled Complainant out. She stated that during staff meetings she would post every employee's selling chart for review. She asserted that Complainant was terminated for falsification of documents because he reported on his Expense Report that he had provided a physician lunch but, when the physician was contacted, he denied having seen Complainant or receiving any lunch that Complainant provided.

Complainant's Witness #1 (Black, female, Democratic) stated that she did not witness Complainant being subjected to any forms of discrimination during his tenure with Respondent. This individual added that she has been an employee for Respondent for thirty one (31) years and she was very surprised with the allegations.

Complainant's Witness #2 (Black, male, Democratic) stated that he did not witness Complainant being subjected to any form of discriminatory practices during his tenure with Respondent. This individual did not have any additional information to provide.

## STANDARD OF REVIEW

In this forum, in order for Complainant to prevail, the OHR record must contain credible, probative and substantial evidence from which a reasonable person would conclude that Complainant met the prima facie elements of discriminatory or retaliatory behavior, and that a legitimate, nondiscriminatory or non-retaliatory explanation for the behavior does not exist. 4 DCMR § 715.1; 4 DCMR § 499.1.

## LEGAL ANALYSIS

## DISPARATE TREATMENT

The DCHRA makes it unlawful to "…discriminate against any individual with respect to compensation, terms, conditions, or privileges of employment, because of such individual's age, race, color, religion, sex, disability, personal appearance, family responsibilities or national origin," among other protected categories. D.C. Official Code § 2-1402.11(a)(1) (2001 Edition).

In a case brought under the DCHRA, the same three-part test applicable to Title VII cases applies. *Atlantic Richfield Co. v. District of Columbia Comm'n on Human Rights*, 515 A.2d 1095, 1099 (D.C. 1986). The initial burden is on the employee to prove her *prima facie* case of discrimination. *Arthur Young & Co. v. Sutherland*, 631 A.2d 354, 361 (D.C. 1993); *see Texas Department of Community Affairs v. Burdine*, 450 U.S. 248 (1981).

# EXHIBIT 2

**(Part B)**

*Floyd Jones v. Glax oSmithKline*
*Docket No.: 06-307-P (CN)*
*EEOC No.: 10C-2006-02855*
*Page 11 of 22*

Guided by the Supreme Court's analysis in *McDonnell Douglas*, the elements of the *prima facie* case of discrimination are: (1) Complainant belongs to one or more protected classes; (2) Complainant was qualified for her position and meeting her employer's legitimate expectations; (3) Complainant was subjected to an adverse action; and (4) a substantial factor in Respondent's decision to take the adverse action was Complainant's membership in a protected class. *McDonnell Douglas, Inc. v. Green,* 411 U.S. 792, 802 (1973); *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506 (1993); *Arthur Young*, 631 A.2d at 361.

An adverse action in a disparate treatment or retaliation claim is one that "constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *See, Brown v. Brody*, 339 U.S. App. D.C. 233, 199 F.3d 446, 456 (D.C. Cir. 1999) citing *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 761 (1999).

In the absence of an action resulting in a diminution of pay or benefits, a Plaintiff must establish the occurrence of an action with "materially adverse consequences affecting the terms, conditions, or privileges of [her] employment. *Brown*, 199 F.3d at 457. An "employment decision does not rise to the level of an actionable adverse action...unless there is a tangible change in the duties or working conditions constituting a material employment disadvantage." *Walker v. WMATA*, 102 F. Supp. 24, 29 (D.D.C. 2000). An action that the Plaintiff establishes as undermining his ability to perform his job satisfactorily, or that threatens his future employment prospects, would be an adverse consequence, and create a material employment disadvantage. *See, Mack v. Strauss,* 134 F. Supp. 2d 103; 2001 U.S. Dist. LEXIS 2341 (D.D.C. 2001).

While an adverse employment action is not limited to a particular type of personnel action, *Cones v Shalala*, 339 U.S. App. D.C. 299, 199 F.3d 512 (D.C. Cir. 2000); *Passer v. American Chemical Society*, 290 U.S. App. D.C. 156, 935 F.2d 322 (D.C. Cir. 1991), not all personnel actions are adverse actions under Title VII. *Brown*, 199 F.3d at 453. Minor changes in work-related duties or opportunities are not actionable unless accompanied by "some other adverse change in the terms, conditions or privileges of employment." *Stewart v. Evans*, 275 F.3d 1126, 1135 (D.C. 2002). Examples of personnel actions that, without more, are not actionable under Title VII are employee inconvenience, an increased workload, a change in assignments and work-related duties, a lateral transfer or denial of a lateral transfer, temporary designation in a position and the delay of a temporary designation. *Stewart*, 275 F.3d at 1135-36; *Brown*, 199 F.3d at 457; *Mungin v. Katten*, 325 U.S. App. D.C. 373, 116 F.3d 1549, 1557 (D.C. Cir. 1997). Neither a negative performance evaluation, false accusation, nor reprimand is an adverse employment action in the absence of some material employment disadvantage. *Stewart*, 275 F.3d at 1137; *Mack*, 134 F. Supp. 2d at 112, citing *Childers v. Slater*, 44 F. Supp. 2d 8, 20 (D.D.C. 1999). Subjective injuries such as damage to an employee's reputation, and public humiliation are not, in and of themselves, necessarily adverse employment actions. *Forkio v. Powell*, 306 F.3d 1127 (D.C. Cir. 2002); *Stewart*, 275 F.3d at 1137;

*Mack*, 134 F. Supp 2d at 113, citing *Childers*, 44 F. Supp. 2d at 20. The same is true of mere investigations of an employee, *Mack*, 134 F. Supp. 2d at 114, citing *Yerdon v. Henry,* 91 F.3d 370, 378 (2d Cir. 1996), or workplace ostracism. *Mack* at 114, citing *Strother v. S. Cal. Permanente Med. Group*, 79 F.3d 859, 869 (9th Cir. 1996).

Finally, not "[every employment action] that makes an employee unhappy is an actionable adverse action." *Smart v. Ball State Univ.*, 89 F.3d 437, 441 (7th Cir. 1996). "Mere idiosyncrasies of personal preference are not sufficient to state an injury." *Brown*, 199 F.3d at 339. If the foregoing were the case, any action an "irritable, chip-on-the-shoulder employee did not like would form the basis of a discrimination suit.*"* *Brodetski v. Duffey*, 141 F. Supp. 2d 35, 46 (D.C.D.C. 2001). Moreover, the DCHRA is not intended to be an avenue for "judicial review of business decisions," or for Courts to act as "super-personnel departments." See, *Brodetski*, 141 F. Supp. 2d at 45.

In proving that the protected classes were substantial factors in the adverse action, a Complainant may introduce evidence that a "similarly situated" person outside Complainant's protected class was treated more favorably. See, *Hollins v. Federal National Mortgage Association,* 760 A.2d 563, 578 (2000*).* A "similarly situated" person is one who is similar to the Complainant in all "relevant aspects." *Id.* Relevant aspects include their respective employment situations and the circumstances generating the allegation of discrimination. *Id.* In short, the Complainant and the other employee must have a comparable employment status, and must have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's response to it. *Id.* To demonstrate that membership in Complainant's protected class was a substantial factor in her termination/failure to hire, evidence can be introduced that the Respondent advertised for the vacant position, or hired a person into the position who was outside of the Complainant's protected categories.

If the employee satisfies her burden, i.e., *prima facie* case, she raises a rebuttable presumption that the employer's conduct is unlawful discrimination. *Arthur Young*, 631 A.2d at 361. After this rebuttable presumption is raised, the employer must then articulate "some legitimate, nondiscriminatory reason for the employment action." *Atlantic Richfield*, 515 A.2d at 1099 (citing *Burdine*, 450 U.S. at 254). The employer can "satisfy its burden by producing admissible evidence from which the trier of fact [can] rationally conclude that the employment action [was not] motivated by discriminatory animus." *Atlantic Richfield*, 515 A.2d at 1099-1100. The employer need not persuade the "[trier of fact] that it was actually motivated by the proffered reasons." *Burdine*, 450 U.S. at 254.

If the employer articulates a legitimate, nondiscriminatory reason for the employment action, "the burden shifts back to the employee to prove…that the employer's stated justification for its action 'was not its true reason but was in fact merely a pretext' to disguise discriminatory practice." *Arthur Young*, 631 A.2d at 361 (citation omitted). "This burden merges with the ultimate burden of persuasion on the question of

*Floyd Jones v. Glax oSmithKline*
*Docket No.: 06-307-P (CN)*
*EEOC No.: 10C-2006-02855*
*Page 13 of 22*

intentional discrimination." *Atlantic Richfield*, 515 A.2d at 1100. "[A]lthough the *McDonnell Douglas* presumption shifts the burden of production to the defendant, 'the ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.'" *St. Mary's Honor Ctr.*, 509 U.S. at 507 (1993)(quoting *Burdine*, 450 U.S. at 253). Thus, once the employer satisfies its burden of producing a nondiscriminatory reason for its action, the employee must show "both that the reason was false, and that discrimination was the real reason." *St. Mary's Honor Ctr.*, 509 U.S. at 515 (emphasis in original).

It is not enough for the employee simply to show that the employer's proffered reason for the employment action was pre-textual, although that will "often considerably assist him in doing so." *St. Mary's Honor Center*, 509 U.S. at 517; *see also Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133 (2000). The employee must also prove "that the employer has unlawfully discriminated." *St. Mary's Honor Center*, 509 U.S. at 514. While pretext in the proffered reason for the employment action may, "in appropriate circumstances" justify an "inference" of discrimination, *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 147 (2000), a Complainant is never relieved of the burden of proving "that the employer has unlawfully discriminated." *St. Mary's Honor Center*, 509 U.S. at 514. In fact, judgment as a matter of law would be appropriate for the employer (i) "…if the record conclusively revealed some other, nondiscriminatory reason for the employer's decision…," or (ii) the plaintiff's factual challenge to the employer's articulated reasons was "weak" and there was "abundant and uncontroverted" independent evidence that no discrimination had occurred. *Reeves*, 530 U.S. at 148.

## TRAINING

Complainant alleges that Respondent subjected him to disparate treatment on the bases of his race (Black), sex (male), and political affiliation (independent) when he was not given the opportunity to attend trainings. He asserts that his coworkers (White, male and female, unknown political affiliation) were given the opportunity to attend trainings.

Complainant fails to establish a *prima facie* case for disparate treatment. He satisfies the first element as he is a Black male who purports to be a political independent, thereby, establishing membership in the protected classes. Complainant also satisfies the second element of his case. Since the terminating conduct is the subject of this case, the OHR will find that Complainant was qualified and generally meeting his employer's legitimate expectations. He was employed by Respondent for approximately ten (10) years and performed exceptionally well until the final year of his employment. Complainant also meets the third element the denial of the opportunity for training is an adverse action. However, Complainant would fail to satisfy the fourth element; Complainant has not proffered evidence that a substantial factor in Respondent's decision was Complainant's protected classes. In proving that the protected classes were substantial factors in the adverse action, a Complainant may introduce evidence that a "similarly situated" person outside Complainant's protected class was treated more favorably. A "similarly situated" person is one who is similar to the Complainant in all "relevant aspects." Relevant

aspects include their respective employment situations and the circumstances generating the allegation of discrimination. To demonstrate that membership in Complainant's protected class was a substantial factor in her termination/failure to hire, evidence can be introduced that the Respondent advertised for the vacant position, or hired a person into the position who was outside of the Complainant's protected categories. Complainant states that White men and women with unknown political affiliation were treated more favorably. Complainant fails to demonstrate that these individuals were given more training opportunities. In addition, Complainant fails to state how the other employee has a comparable employment status engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's response to it. OHR does note that two (2) Black employees independently stated that they did not witness any discriminatory practices by Respondent; one witness was a male and the other a female who had been employed for Respondent for thirty-one (31) years.

Furthermore, Respondent articulates a legitimate, nondiscriminatory reason for its alleged actions. Respondent denies that it failed to give Complainant the opportunity for training and submits information on trainings that remain available for all employees on its web site. In addition, Respondent asserts that Complainant was provided with the opportunity to shadow another employee, Complainant's supervisor met regularly with Complainant to suggest techniques and Complainant failed to specify trainings that he wished to attend.

In rebuttal, Complainant fails to refute Respondent's assertions and demonstrate that it was pretext. Instead, Complainant proffers information that he attended sufficient training by enrolling in a graduate program. Complainant fails to demonstrate that Respondent failed to provide him with the opportunity for training on the bases of his protected classes.

## PROMOTION

Complainant alleges that Respondent subjected him to disparate treatment on the bases of his race, sex and political affiliation when Respondent failed to select him for promotion for any of the positions for which he applied during the period from January 2001 to January 2006.

Guided by the Supreme Court's analysis in *McDonnell Douglas*, the elements of the *prima facie* case of discrimination for failing to promote are: (1) that Complainant belonged to a protected class; (2) Complainant was qualified for and applied for the position; (3) Complainant was rejected for the position; and (4) Respondent hired a person not in Complainant's protected group. *McDonnell Douglas, Inc. v. Green,* 411 U.S. 792, 802 (1973); *St. Mary's Honor Center*, 509 U.S. at 506; *Arthur Young*, 631 A.2d at 361.

In *Ash v Tyson Foods*, the Court discussed the process of analyzing a difference in qualifications in candidates for a promotion or for hire. 546 SU _, 126 S Ct 1195, 163

Led 2d 1053, 2006 US LEXIS 1819. Under this Court's decisions, qualifications evidence may suffice, at least in some circumstances, to show pretext. See, *Patterson v McLean Credit Union,* 491 US 164, 187-188, 109 S. Ct 2363, 105 L ED 2d 132 (1989) (indicating a plaintiff "might seek to demonstrate that respondent's claim to have promoted a better qualified applicant was pretextual by showing that she was in fact better qualified than the person chosen for the position"), superseded on other grounds by 42 USC § 1981 (b); Texas 42 USC § 1981 (b); *Texas Dept of Community Affairs v Burdine,* 450 US 248, 259, 101 S. Ct. 1089, 67 Led 207 (1981). ("The fact that a court may think that the employer misjudged the qualifications of the applicants does not in itself expose him to Title VII liability, although this may be probative of whether the employer's reasons are pretexts for discrimination"); cf. *Reeves v Sanderson Plumbing Products, Inc.*, 530 US 133, 148, 120 S. Ct. 2097, 147 L.Ed. 2d 105 (2000) ("[A] plaintiff's *prima facie* case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated").

The visual image of words jumping off the page to slap you (presumably a court) in the face is unhelpful and imprecise as an elaboration of the standard for inferring pretext from superior qualifications. Federal courts, including the Court of Appeals for the Eleventh Circuit in a decision it cited here, have articulated various other standards, see, *e.g., Cooper, supra*, at 732 (noting that "disparities in qualifications must be of such weight and significance that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff for the job in question" (internal quotation marks omitted)); *Raad v Fairbanks North Star Borough School District,* 323 F3d 1185, 1194 (CA9 2003) (holding that qualifications evidence standing alone may establish pretext where the plaintiff's qualifications are "'clearly superior'" to those of the selected job applicant); *Aka v Washington Hospital Center,* 332 IS App. DC 256, 156 F3d 1284, 1294 (CADC 1998) (en banc) (concluding the factfinder may infer pretext if "a reasonable employer would have found the plaintiff to be significantly better qualified for the job"), and in this case the Court of Appeals qualified its statement by suggesting that superior qualifications may be probative of pretext when combined with other evidence, see 129 Fed. App. At 533.

Complainant establishes a *prima facie* case for disparate treatment in promotion. He satisfies the first element of belonging to the protected classes as noted *supra*. He also satisfies the second and third elements as evidence in the OHR record confirms that he applied and was rejected for the positions. The evidence in the OHR record does not establish that Complainant was not qualified for all the positions, but indicates that he did not meet the qualifications for only two (2) positions. And Complainant satisfies the fourth element as six (6) out of nine (9) times, Respondent selected an individual outside of Complainant's protected class.

However Complainant's case must fail because Respondent articulates legitimate, nondiscriminatory reasons for not selecting Complainant for the positions. In all positions, Respondent asserts that Complainant was less qualified than the selected individuals. The OHR record contains copies of Complainant's resume as well as, those of the selected individuals for comparison. Perusal of the resumes confirms that the

selected individuals demonstrated significantly more relevant experience than Complainant. Furthermore, in three (3) of the nine (9) positions, Respondent selected individuals who were of the same race and sex as Complainant. Complainant fails to produce the credible, probative and substantial evidence necessary for a reasonable person to conclude that Respondent's legitimate, nondiscriminatory reasons are false or pretext for discrimination.

## TERMINATION

Complainant alleges that Respondent subjected him to disparate treatment on the bases of his race, sex and political affiliation when he was terminated for gross misconduct, but had not received a prior disciplinary action.

Complainant fails to establish a *prima facie* case for disparate treatment. As noted above, Complainant satisfies the first element because he is a member of the protected classes. Complainant also satisfies the second element. As noted *supra*, Complainant was qualified and excluding the terminating event, he was generally meeting the legitimate expectations of his employer. Complainant also meets the third element. His termination was adverse. But Complainant fails to meet the final element. Complainant has not demonstrated that individuals outside of his protected class who engaged in the same conduct were not terminated.

Moreover, Respondent proffers a legitimate, nondiscriminatory reason for terminating Complainant's employment. According to Respondent's *Employee Conduct Policy*, misrepresentation of expenses in a false expense report is a violation that warrants immediate discharge. Complainant does not produce evidence to refute Respondent's claim that he submitted a false expense report. Therefore, Complainant fails to sustain his charge that Respondent subjected him to disparate treatment when it terminated him.

## HOSTILE WORK ENVIRONMENT

The DCHRA makes it unlawful to "…discriminate against any individual with respect to compensation, terms, conditions, or privileges of employment, because of such individual's age, race, color, religion, sex, matriculation or national origin," among other protected categories. D.C. Official Code § 2-1402.11(a)(1) (2001 Edition). It is substantially similar to Title VII. *Howard v. Best*, 484 A.2d 958, 977 (D.C. 1984). "In interpreting [the Human Rights Act, the Court of Appeals has] generally looked to cases from the federal courts involving claims brought under the Civil Rights Act of 1964 for guidance…." *Wallace v. Skadden, Arps, Slate, Meagher & Flom, et al.*, 715 A.2d 873, 889, n. 31 (D.C. 1988).

When the workplace is permeated with discriminatory intimidation, ridicule, and insult, that are sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment, Title VII is violated." *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993). Whether an environment is hostile or abusive is determined by the totality of the circumstances, such as the frequency of the

discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with the employee's work performance. The effect on the employee's psychological wellbeing may be considered, but the employee need not prove psychological injury. *Id.* at 23.

In the District of Columbia, an employer may not be held liable for a supervisor's hostile work environment harassment, not resulting in a tangible employment action, if the employer is able to establish that it adopted policies and implemented measures such that the victimized employee either knew or should have known that the employer did not tolerate such conduct and that he knew or should have known that he could report the harassment to the employer without fear of adverse consequences and the employee's conduct in not seeking relief pursuant to the policy was unreasonable. *Faragher v. City of Boca Raton,* 524 U.S. 775 (1998); *Burlington Industries, Inc. v. Ellerth.,* 524 U.S. 742 (1998); *Gary v. Long,* 59 F.3d 1391, *cert. den.* 516 U.S. 1011 (D.C. Cir. 1995). Additionally, where Complainant seeks to hold an employer liable for the conduct of an employee, Complainant must also establish *respondeat superior* liability. *Raymond v. U.S. Capitol Police Bd.,* 157 F. Supp. 2d 50, 57-58 (D.D.C. 2001).

A Complainant may establish a *prima facie* case of hostile work environment if she can demonstrate that: (1) she is a member of a protected class; (2) she has been subjected to unwelcome harassment; (3) the harassment was based on membership in her protected class; (4) the harassment is severe or pervasive enough to affect a term, condition, or privilege of her employment; and (5) the employer knew or should have known of the harassment, but failed to take any action to prevent the harassment. *Pegues v Mineta, Secretary, US Department of Transportation*, 2006 US Dist LEXIS 59118 (DC 2006) Unwelcome harassment is conduct that the employee neither solicited nor invited and that the employee regarded as undesirable or offensive. *Daka, Inc. v. Breiner*, 711 A.2d 86 (D.C. 1998). In determining the degree of severity or pervasiveness of hostility, the test

is whether working conditions have been discriminatorily altered. *Id.* at 92 (citing *Howard Univ. v. Best*, 484 A.2d 958, 978 (D.C. 1984) and *Harris v. Forklift Sys.*, 510 U.S. 17 (1993)). "More than a few isolated incidents must have occurred, and genuinely trivial occurrences will not establish a *prima facie* case. However, no specific number of incidents, and no specific level of egregiousness need be proved. The trier of fact should consider the amount and nature of the conduct, the plaintiff's response to such conduct, and the relationship between the harassing party and the plaintiff." *Daka,* 711 A.2d at 93.

## EMPLOYER LIABILITY

According to the Equal Employment Opportunity Commission ("EEOC") and related case law, when harassment by a supervisor creates an unlawful hostile environment, but does not result in a tangible employment action, the employer can raise an affirmative defense to liability or damages, which it must prove by a preponderance of the evidence. The defense consists of two necessary elements:

*Floyd Jones v. Glax oSmithKline*
*Docket No.: 06-307-P (CN)*
*EEOC No.: 10C-2006-02855*
*Page 18 of 22*

> (a) the employer exercised reasonable care to prevent and correct promptly
> any harassment; and (b) the employee unreasonably failed to take advantage
> of any preventive or corrective opportunities provided by the employer or to
> avoid harm otherwise.

A "tangible employment action" constitutes an "official act of the enterprise" or other
wielding of "company" authority that "significantly changes" Complainant's employment
status. *Pennsylvania v. Suders*, 542 U.S. 129, 144 (2004) (citing *Ellerth*, 524 U.S. at
761). Such actions include a(n): "humiliating demotion; extreme cut in pay; transfer to a
position in which Complainant would face unbearable working conditions;" "fail[ure] to
promote, reassignment with significantly different responsibilities; or [other] decision
causing a significant change in benefits." *Id.* at 134, 144. In other words, such an
employment action amounts to actions by a supervisor, who "has been empowered by the
company as...[an] agent to make economic decisions affecting other employees under his
or her control." *Suders*, 542 U.S. at 144 (citing *Ellerth*, 524 U.S. at 762). By nature,
these actions are typically "documented in official company records," and "may be
subject to review by higher[-]level supervisors." *Id.* at 144-45. In essence, such
"official" action shows "beyond question" that the employer "has used his managerial or
controlling position to the employee's disadvantage." *Suders*, 542 U.S. at 148 (citing
*Ellerth*, 524 U.S. at 760).

If an employer can prove that it discharged its duty of reasonable care and that the
employee could have avoided all of the harm but unreasonably failed to do so, the
employer will avoid all liability for unlawful harassment. If an employer cannot prove
that it discharged its duty of reasonable care and that the employee unreasonably failed to
avoid the harm, the employer will be liable. For example, if unlawful harassment by a
supervisor occurred and the employer failed to exercise reasonable care to prevent it, the
employer will be liable even if the employee unreasonably failed to complain to
management or even if the employer took prompt and appropriate corrective action when
it gained notice. See, e.g., *EEOC v. SBS Transit, Inc.*, No. 97-4164, 1998 WL 903833 at
*1 (6th Cir. Dec. 18, 1998) (unpublished) (lower court erred when it reasoned that
employer liability for sexual harassment is negated if the employer responds adequately
and effectively once it has notice of the supervisor's harassment; that standard conflicts
with affirmative defense which requires proof that employer "took reasonable care to
prevent and correct promptly any sexually harassing behavior and that the plaintiff
employee unreasonably failed to take advantage of preventative or corrective
opportunities provided by the employer").

The first prong of the affirmative defense requires a showing by the employer that it
undertook reasonable care to prevent and promptly correct harassment. Such reasonable
care generally requires an employer to establish, disseminate, and enforce an anti-
harassment policy and complaint procedure and to take other reasonable steps to prevent
and correct harassment. The EEOC artfully details that there are no "safe harbors" for
employers based on the written content of policies and procedures. Even the best policy
and complaint procedure will not alone satisfy the burden of proving reasonable care if,
in the particular circumstances of a claim, the employer failed to implement its process

effectively. See *Hurley v. Atlantic City Police Dept.,* No. 96-5634, 96-5633, 96-5661, 96-5738, 1999 WL 150301 (3d Cir. March 18, 1999) ("*Ellerth* and *Faragher* do not, as the defendants seem to assume, focus mechanically on the formal existence of a sexual harassment policy, allowing an absolute defense to a hostile work environment claim whenever the employer can point to an anti- harassment policy of some sort"; defendant failed to prove affirmative defense where it issued written policies without enforcing them, painted over offensive graffiti every few months only to see it go up again in minutes, and failed to investigate sexual harassment as it investigated and punished other forms of misconduct.).

For example, if the employer has an adequate policy and complaint procedure and properly responded to an employee's complaint of harassment, but management ignored previous complaints by other employees about the same harasser, then the employer has not exercised reasonable care in preventing the harassment. See *Dees v. Johnson Controls World Services, Inc.,* 168 F.3d 417, 422 (11th Cir. 1999) (employer can be held liable despite its immediate and appropriate corrective action in response to harassment complaint if it had knowledge of the harassment prior to the complaint and took no corrective action). Similarly, if the employer has an adequate policy and complaint procedure, but an official failed to carry out his or her responsibility to conduct an effective investigation of a harassment complaint, the employer has not discharged its duty to exercise reasonable care. Alternatively, lack of a formal policy and complaint procedure will not defeat the defense if the employer exercised sufficient care through other means.

Complainant alleges that Respondent subjected him to a hostile work environment when his supervisor spoke to him in a belittling manner, nit picked with him about his work performance, accused him of not performing on the same level as his coworkers and verbally abused him and singled him out as being responsible for the decline in the company.

Complainant fails to establish a *prima facie* case for hostile work environment on the bases of his race, sex and political affiliation. Complainant satisfies the first element as he has shown that he is a member of protected classes under the DCHRA. Complainant satisfies the second element as the burden for satisfying that element is not onerous. Complainant's representations that his supervisor spoke to him in a belittling manner, "nit picked" about his work, verbally abused him, accused him of not performing as his coworkers and accused him of being responsible for the company's decline qualify as unwelcome harassment. Unwelcome harassment is conduct that the employee neither solicited nor invited and that the employee regarded as undesirable or offensive.

However, Complainant fails to satisfy the remaining elements. He fails to satisfy the third element. He makes a general statement that his coworkers (White, female) were not subjected to the same harassment, but he does not specify how the harassment relates to his race, sex or political affiliation. Information in the OHR record and Complainant's representations indicate that the alleged harassment relates to his work performance and not his protected classes. In addition, Complainant fails to indicate the severity and

*Floyd Jones v.  Glax oSmithKline*
*Docket No.: 06-307-P (CN)*
*EEOC No.: 10C-2006-02855*
*Page 20 of 22*

pervasiveness of the harassment and, thereby, fails to satisfy the fourth element. The OHR will determine if an environment is hostile or abusive by reviewing the totality of the circumstances, such as the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with the employee's work performance. Complainant does not allege any such evidence.

In Complainant's rebuttal to Respondent's position, he asserts that he spoke with the Human Resources Director to document "unfair" treatment by his supervisor. The OHR record contains information that Complainant alleged that his supervisor subjected him to demeaning things such as describing him as being inferior to his counterparts (White, female), as being bizarre, contacting his accounts about his professionalism and making disparaging remarks about him. Complainant's representations do not constitute a basis for harassment or a hostile work environment and did not alert Respondent that he was making a claim of hostile work environment. As such, Complainant fails to establish a *prima facie* case and his claim must fail.

## NO CAUSE DETERMINATION

Based on the foregoing reasons:

1.   The OHR finds **NO PROBABLE CAUSE** to believe that Respondent subjected Complainant to disparate treatment in the award of promotions on the bases of his sex (male), political affiliation (Independent), race (Black) when Respondent failed to select Complainant for promotion from January 2001 to January 2006, but other employees (White, male and female, unknown political affiliation) with less experience were selected for promotions.

2.   The OHR finds **NO PROBABLE CAUSE** to believe that Respondent subjected Complainant to disparate treatment on the bases of his sex (male), race (Black) and political affiliations (Independent) in June 2005 when Respondent denied Complainant permission to attend trainings, but other employees (White, female and male, unknown political affiliation) were permitted to attend trainings.

3.   The OHR finds **NO PROBABLE CAUSE** to believe that Respondent subjected Complainant to a hostile work environment on the bases of his race (Black), sex (male) and political affiliation (Independent) when, from January 2005 to March 2006, Complainant's supervisor (White, female, Republican): 1) spoke to Complainant in a belittling manner; 2) constantly nit- picked with Complainant's work performance accusing Complainant of not performing as well as his coworkers, yet Complainant's coworkers sold less product than Complainant; and 3) verbally abused and singled out Complainant as being responsible for the decline in the company.

4.   The OHR finds **NO PROBABLE CAUSE** to believe that Respondent subjected Complainant to disparate treatment on the bases of his race (Black), sex (male) and political affiliation (Independent) on March 30, 2006 when Respondent terminated

*Floyd Jones v. Glax oSmithKline*
*Docket No.: 06-307-P (CN)*
*EEOC No.: 10C-2006-02855*
*Page 21 of 22*

Complainant for gross misconduct although, prior to his termination, he never received any other disciplinary actions.

**IT IS SO ORDERED.**

## RIGHT TO APPLY FOR RECONSIDERATION

Complainant may apply for reconsideration of the No Probable Cause determination pursuant to 4 DCMR § 719. The application, along with all supporting documentation, must be submitted in writing to the Director of the Office of Human Rights within thirty (30) calendar days from _____ 6 / 15 / 07 _____.

Complainant may apply for reconsideration on the grounds of newly discovered evidence, misapplication of laws, or misstatement of material facts. The request must be based on one or more of these grounds. Newly discovered evidence is evidence that: (a) is competent, relevant, and material; (b) was not reasonably discoverable before the issuance of this Letter of Determination; and (c) would alter the ultimate outcome in this case. The application for reconsideration may be dismissed if the application: (a) is not based on one of the above grounds; or (b) is not timely filed. **COMPLAINANT MUST INCLUDE ALL SUPPORTING DOCUMENTATION AND REASONS FOR THE RECONSIDERATION REQUEST IN THE ORIGINAL APPLICATION FOR RECONSIDERATION.** The OHR may forward a copy of any application for reconsideration, along with all supporting documentation, to the other party for a response.

If Complainant does not file a request for reconsideration, Complainant has **three (3) years** from receipt of this Letter of Determination to file a Petition for Review with the District of Columbia Superior Court.

## RIGHT TO SUBSTANTIAL WEIGHT REVIEW

As a Complainant you have the right to a "Substantial Weight Review" from the U.S. Equal Employment Opportunity Commission (EEOC). To obtain a Substantial Weight Review, you must, within **fifteen (15) calendar days**. Send your written request to: State and Local Coordinator, EEOC, 1801 L Street, N.W., Second Floor, Washington, D.C. 20005.

Sincerely,

Gustavo F. Velasquez
Director

*Floyd Jones v. Glax oSmithKline*
*Docket No.: 06-307-P (CN)*
*EEOC No.: 10C-2006-02855*
*Page 22 of 22*

cc:    Ms. Kerry A. Shad, Esq.
       Smith, Anderson, Blount, Dorsett,
       Mitchell & Jernigan, L.L.P.
       *for GlaxoSmithKline*
       P.O. Box 2611
       Raleigh, North Carolina   27602-2611

RECEIVED

JUN 1 8 2007

SMITH ANDERSON BLOUNT
DORSETT MITCHELL & JERNIGAN

# EXHIBIT 3

**GOVERNMENT OF THE DISTRICT OF COLUMBIA**
**Office of Human Rights**



Judiciary Square Office
441 4th Street, NW, Suite 570N
Washington, DC 20001
Phone: (202) 727-4559  Fax: (202) 727-9589

Penn Branch Office
3220 Pennsylvania Avenue, SE, 1st Fl.
Washington, DC 20020
Phone: (202) 727-4559  Fax: (202) 645-6390

## DETERMINATION ON COMPLAINANT'S
## REQUEST FOR RECONSIDERATION

**RECEIVED**

SEP 10 2007

SMITH ANDERSON BLOUNT
DORSETT MITCHELL & JERNIGAN

September 4, 2007

Mr. Floyd Jones
307 Stony Hill Court
Fort Washington, MD 20744

RE:   *Floyd Jones v. GlaxoSmithKline*
      **Docket No.: 06-307-P (CN)**
      **EEOC No.: 10C-2006-02855**

Dear Mr. Jones:

On July 2, 2007, the Office of Human Rights (hereinafter "the OHR") received your
request for reconsideration of its "No Probable Cause" determination dated June 11,
2007. You are referred to as "**COMPLAINANT.**" GlaxoSmithKline is referred to as
"**RESPONDENT.**"

Pursuant to the District of Columbia Human Rights Act of 1977, *D.C. Code § 2-1401.01
et seq.* (2001 Edition) ("DCHRA"), and *4 DCMR §§ 114.3* and *719*, the OHR has
reviewed your Request for Reconsideration of its finding issued in the above-referenced
case. The following determination is issued on behalf of the OHR.

### I.    JURISDICTION

The OHR is empowered to investigate complaints of discrimination on the basis of
nineteen (19) protected categories in the areas of employment, housing, education and
public accommodations. However, any complaint of discrimination filed pursuant to the
DCHRA shall be filed with the OHR within one (1) year of the occurrence of the
unlawful discriminatory practice, or the discovery thereof, except for cases filed against
the District of Columbia government. Complainants who file discrimination complaints
against the District of Columbia must first file the discrimination complaint with the
District of Columbia agency within 180 days of the occurrence or the discovery of the
unlawful discriminatory practice. The aforementioned requirements are jurisdictional;

therefore, if Complainant fails to meet the requirements, the OHR does not have jurisdiction over the claim.

## II.    STANDARD FOR RECONSIDERATION

A Complainant who files a complaint of discrimination against a private entity, and who receives a "No Probable Cause" determination, must file a request for reconsideration within thirty (30) days of receipt of the OHR's Letter of Determination ("LOD") in order for the request to be timely. *4 DCMR § 719.* Requests for reconsideration in complaints filed against the District of Columbia must be filed within fifteen (15) days of receipt of the LOD. The Complainant may request reconsideration of the determination based upon: new evidence, misapplication of the law, or misstatement of the facts. Newly discovered evidence is evidence that: (1) is competent, relevant, and material; (2) was not reasonably discoverable prior to issuance of the final decision by the Director because such evidence was either unknown to the Complainant while her claim was pending, or otherwise unobtainable; and (3) would alter the ultimate outcome in the case, if credited. Misstatements of material facts must be based upon more than a mere dispute of fact. Material facts in a case are facts upon which the outcome of the case depends. If the request for reconsideration is untimely or is not based on one or more of the aforementioned grounds, the request for reconsideration shall be denied. *4 DCMR §§ 719.1 and 719.2.*

## III.    ANALYSIS

Complainant's request for reconsideration is timely filed. The LOD being reconsidered is dated June 11, 2007. The OHR received Complainant's request on July 2, 2007.

Complainant's application for reconsideration indicates that his basis for requesting reconsideration is misstatements of material facts. On the one hand, he alleges that the OHR did not conduct a complete investigation and, on the other hand, that one of his witnesses gave false information. Therefore, he asserts that the OHR's decision was based on misstatements of material facts.

### Misstatements of Material Facts

In his application for reconsideration, Complainant recounted the following examples of material facts contained in the LOD that he alleges to be misstatements:

- He asserts that Respondent's claim that he was fired for gross misconduct is a "cloaked rationale for justifying racial discrimination." He explains that he purchased a meal for the physician and left it in his office and the simple mistake of mis-recording his calls and expenses is being utilized to justify the gross misconduct charge. Besides, Complainant contends that Respondent has thousands of outstanding and incorrectly reported calls that it is continuously sending emails and voicemails to employees to correct, but he was singled out because of his racial, political and ethnic background.

- He states that his witness #1 was present on several occasions when the Regional Sales Director singled him out for disparate treatment, but the information she gave did not provide the full scope of the ramifications of the actions taken against him. He claims that witness #1 had great reservations and hesitations about discussing her own treatment which consisted of being given unfavorable assignments through territory designations because she was tenured and had 30+ years of service with the company. Also, he claims that the witnesses he listed were all approached and briefed by Respondent's HR Department and Legal Department prior to any questioning, which was coercion and an infringement on his right to a fair process. Complainant similarly claims that his witnesses are all employed by Respondent and concerned about their future employment.

- Complainant states that the information supplied on training is greatly incomplete. He explains that the training to improve skills is approved based on the subjective opinion of the employee's manager. He asserts that the Regional Sales Director did not approve any training for him or she would have enrolled him in it. Besides, he states that the Regional Sales Director stated to him that he should be more concerned about the customers.

In response to Complainant's assertions, Respondent's *Employee Conduct Policy* states that misrepresentation of expenses in a false expense report is a violation that warrants immediate discharge. Complainant does not produce evidence to refute Respondent's claim that he submitted a false expense report.

Respondent states that Complainant's supervisor recognized that Complainant needed assistance in business planning and targeting, developing sales strategy, and building relationships with customers. With that realization, Complainant's supervisor coached him in these skill areas. Moreover, Respondent alleges that Complainant's supervisor arranged for Complainant to spend a day with the sales region's Area Development Manager in an effort to develop Complainant's skills in sales strategy with a goal of increasing sales. Respondent also claims that Complainant's supervisor provided Complainant with every opportunity to increase these key selling skills.

In addition, Respondent states that it had other training resources in place, but Complainant did not take advantage of any of the training offered to him. Respondent contends that Complainant never specifically requested training from management or objected to a lack of training. Respondent adds that Complainant was offered the same opportunities as other similarly situated employees. Complainant fails to refute Respondent's assertions and demonstrate that it was pretext. Instead, Complainant proffers information that he attended sufficient training by enrolling in a graduate program. Complainant fails to demonstrate that Respondent failed to provide him with the opportunity for training on the bases of his protected classes.

Respondent asserts that Complainant was less qualified than the selected individuals for promotion. The OHR record contains copies of Complainant's resume, as well as those of the selected individuals for comparison. Perusal of the resumes confirms that the

*Floyd Jones v. GlaxoSmithKline*
OHR Docket No.: 06-307-P (CN); EEOC No.: 10C-2006-02855
Page 4 of 5

selected individuals demonstrated significantly more relevant experience than
Complainant. Furthermore, in three (3) of the nine (9) positions, Respondent selected
individuals who were of the same race and sex as Complainant.

Complainant makes a general statement that his coworkers (White, female) were not
subjected to the same harassment, but he does not specify how the harassment relates to
his race, sex or political affiliation. Information in the OHR record and Complainant's
representations indicate that the alleged harassment relates to his work performance and
not his protected classes. In addition, Complainant fails to indicate the severity and
pervasiveness of the harassment

Therefore, Complainant's allegations of misstatements of material facts fail to satisfy the
required standard. On the one hand, he fails to produce evidence demonstrating that the
statements are misstatements. On the other hand, the alleged misstated statements would
not demonstrate discrimination on the bases of his protected classes.

## IV.   CONCLUSION

An analysis of Complainant's representations demonstrates that there exists no legal basis
for reversing the OHR's decision. Complainant's representations fail to proffer the
evidence necessary to establish that the OHR record contains misstatements of material
facts on which the OHR relied when making the determination in his case. Accordingly,
the OHR will affirm its decision of "No Probable Cause."

Complainant's request for reconsideration of the OHR's "No Probable Cause"
determination is **GRANTED.** However, the OHR's "No Probable Cause" determination
is **AFFIRMED.**

**IT IS SO ORDERED.**

This letter concludes the review process of the OHR. This letter also constitutes a final
decision from OHR. Complainant has three (3) years from receipt of this finding to file a
petition for review with the D.C. Superior Court.

Sincerely,

Gustavo F. Velasquez
Director

*Floyd Jones v. GlaxoSmithKline*
**OHR Docket No.: 06-307-P (CN); EEOC No.: 10C-2006-02855**
Page 5 of 5

cc:    Kerry A. Shad, Esq.
       Smith, Anderson, Blount, Dorsett,
       Mitchell & Jernigan, L.L.P.
       GlaxoSmithKline
       P.O. Box 2611
       Raleigh, North Carolina   27602-2611