THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| FLOYD JONES ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 1:08-cv-00566 (RMC) |
| ) | |
| GLAXO SMITHLINE ) | |
| (D/B/A SMITHKLINE BEECHAM, INC.) ) | |
| ) | |
| Defendant. ) | |
| ) | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

**I.   INTRODUCTION**

Plaintiff, Floyd Jones, ("Jones") commenced this action in the District of Columbia Superior Court, seeking to redress discrimination and wrongful termination by Defendant, Glaxo Smithkline, ("GSK") following the issuance of a "no probable cause" notice.  Plaintiff's claims were appropriately before that Court, before the Defendant removed the case to this Honorable Court, on the basis of non-existent diversity.  GSK has filed a Motion to Dismiss on the grounds that Jones allegedly failed to assert this claim within the one year statute of limitations for claims arising under the D.C. Human Rights Act ("DCHRA"), D.C. Code §2-1401.01 *et seq.* (2001 ed.) and that Jones' DCHRA administrative action precludes him from asserting his Complaint.  The fatal flaw in GSK's Motion is that Jones's administrative complaint to DCHRA is the very mechanism that tolls the one year statute of limitations and allows Jones to assert his claim in the

District of Columbia Superior Court.[1] The Defendant's Motion should fail because there can be no doubt that the District of Columbia Superior Court has jurisdiction over the substance of Plaintiff's claim, and the D.C. Court of Appeals has consistently found such jurisdiction in similar cases. Further, the Defendant has grounded its Motion in an incorrect reading of the DCHRA regarding the rights of DCHRA claimants to bring a private right of action in civil court.

Accordingly, Plaintiff urges the summary denial of Defendant's Motion to Dismiss and that this Court grant such further relief as requested in Plaintiff's Motion to Remand filed on May 2, 2008.

## II.     PROCEDURAL HISTORY

On June 19, 2006 Jones timely filed a formal administrative Complaint of Discrimination, Docket Number 06-307-P (CN). Compl. at ¶48. Thereafter, the Office of Human Rights ("OHR") assigned Plaintiff's complaint to an OHR investigator. *Id.* A Letter of Determination, finding no probable cause, dated June 11, 2007 was issued by the investigator. Compl. at ¶49. Subsequently, on July 2, 2007, Jones timely submitted a Request for Reconsideration pursuant to 4 DCMR 719. *Id.* OHR issued a finding denying the Reconsideration on September 4, 2007. *Id.* Plaintiff then filed this Complaint in the District of Columbia Superior Court on March 6, 2008. Defendant removed the action to this Court and gave notice to Plaintiff on April 1, 2008. Subsequently, Plaintiff filed a Motion to Remand the proceeding back to the District of Columbia Superior Court, which is currently pending before this Court.

---

[1] Defendant admits that Plaintiff may petition review of the agency decision before the District of Columbia Superior Court. See Defendant's Memorandum of Points and Authorities in Support of Its Motion to Dismiss, at page 8.

### III.  FACTS

As alleged in the Complaint ("Compl."), this is a challenge to Defendant's unlawful employment discrimination against Plaintiff based on his race (African American) in violation of the DCHRA.  Jones was employed by GSK for over ten years.  Compl. at ¶8.  The position he held at the time of his termination was as Senior Executive Oncology Account Manager within Pharmaceutical Sales.  *Id.*  While under the supervision of Joanna Turbeville, Jones experienced discrimination in the form of a hostile work environment, disparate treatment and disparate impact.  In 2000, Jones was selected to participate in a sales training program which he completed in order to further his skills and put himself in a position to be considered for promotions.  Compl., at ¶11.  Jones was effusive in his desire to be promoted to a managerial position; he sought out and was consistently denied training by his supervisor.  Compl. at ¶ 26-28.  During several instances thereafter Ms. Turbeville compared herself to Jones claiming she "had more of what it takes to get ahead" and that he was "bizarre" and inferior to his colleagues (all of whom were white).  Compl., at ¶19, 36.  Plaintiff's supervisor continually reprimanded him without cause despite his glowing performance evaluations from previous supervisors and numerous awards for Top Sales within the company. Compl. at ¶10.  Throughout the period between 2005-2006, Ms. Turbeville began calling his sales account contacts after he had submitted his expense report and call lists and suggesting to clients that he was making false reporting.  Compl. at ¶20.  It was not a common practice of Ms. Turbeville to make these calls on behalf of other employees.  Compl. at ¶ 20, 41.  After making a complaint to Human Resources, Jones was terminated on March 31, 2006 by his supervisor, without an investigation or a chance to explain any confusion surrounding his expenses. Compl. at ¶36, 46.

### III. STANDARD OF REVIEW

The facts alleged in the Complaint must be treated as true and the plaintiff must be given the benefit of all reasonable inferences that can be derived from the facts. *Trudeau v. FTC*, 456 F.3d 178, 193 (D.C. Cir. 2006). When reviewing such a motion to dismiss the court must accept as true all the factual allegations contained in the complaint. *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164 (1993). Specifically, a complaint in an employment discrimination lawsuit does not need to assert specific facts to establish a prima facie case of discrimination, but need only provide a "short and plain statement of the claim showing that the pleader is entitled to relief." *Quarles v. General Investment & Development Co.*, No. 02-1303 (D.D.C. 03/12/2003)(*quoting Swierkiewicz v. Sorema*, 534 U.S. 506, 508 (2002), and *citing* Fed. R. Civ. P. 8(a)(2)); *Sparrow v. United Airlines, Inc.*, 216 F.3d 1111, 1115 (D.C. Cir. 2000). Therefore, a complaint should not be dismissed for failure to state a claim unless "it appears beyond doubt that the plaintiff[s] can prove no set of facts in support of [their] claim[s] which would entitle [them] to relief." *Conley*, 355 U.S. at 45-46.

### IV. ARGUMENT

Defendant's Motion to Dismiss Plaintiff's claims is erroneous for two reasons. First, the filing of an administrative complaint tolls the one year DCHRA statute of limitations and thus, Plaintiff's claims are not time-barred. Second, a finding of 'no probable cause' by an OHR investigator is not a "contested case" that limits a Claimant's remedy to judicial review of an administrative action.

4

A. **THE QUESTIONS PRESENTED BY DEFENDANT SHOULD BE CONSIDERED BY THE D.C. SUPERIOR COURT, THE PROPER FORUM FOR THIS CASE**

On April 1, 2008, Defendant removed this action to this Honorable Court on the basis of diversity. As we argued in our Motion to Remand this case back to D.C. Superior Court, this Court does not have original jurisdiction to decide the issues raised in Plaintiff's Complaint. The jurisdiction of the United States District Court and the District of Columbia Office of Human Rights (OHR) are mutually exclusive. *Weiss v. International Bhd. of Elec. Workers*, 729 F. Supp. 144, 1990 U.S. Dist. LEXIS 902 (D.D.C. 1990). This is not to say that this Court has not issued opinions regarding the interpretation of the DCHRA; in fact, it has. However, those cases are distinguishable from this case in that the plaintiffs in those cases chose the District Court for the District of Columbia as their court of original jurisdiction. That is not the case here. Jones has been compelled to make his case here as a result of the removal of this action by the Defendant on the basis of diversity jurisdiction that does not exist, and cannot be established.

Further, the issues presented by this Motion to Dismiss are uniquely within the jurisdiction of the D.C. courts because, as will be demonstrated below, the conflicting case law and regulatory landscape of administrative procedure must be reconciled to effectuate the rights of claimants under the DCHRA. This court should relinquish this case back to the D.C. Superior Court for due consideration of these issues.

B. **THE DCHRA EXPRESSLY ALLOWS FOR THE TOLLING OF THE STATUTE OF LIMITATIONS FOR PRIVATE ACTIONS DURING THE ADMINISTRATIVE COMPLAINT PROCESS**

The timely filing of a complaint with the [District of Columbia] Office [of Human Rights] *shall* toll the running of the statute of limitations while the complaint is pending before

5

the Office. *Executive Sandwich Shoppe, Inc. v. Carr Realty Corp.*, 749 A.2d 724, 734 (D.C. 2000). [Emphasis added.] Defendant rests its timeliness argument on *Kamen v. International Brotherhood of Electrical Workers, AFL-CIO*, 505 F. Supp. 2d 66 (D.D.C. 2007), in which this Court concluded that the statute of limitations under the DCHRA was <u>not</u> tolled during the administrative process.  See Defendant's Memorandum of Points and Authorities In Support of Its Motion to Dismiss (Def's Memo of Pts. and Author.) at p. 8-10.

Plaintiff respectfully argues that the conclusion in *Kamen* was incorrect, and can only conclude that, at the time the case was adjudicated, the Court was not directed to D.C. Code §2-1403.16(a), which states—"The timely filing of a complaint with the [Office of Human Rights] . . . shall toll the statute of limitations while the complaint is pending."  The *Kamen* decision, at least as it relates to the DCHRA, rests on the precedent of *Anderson v. Safe Deposit*, 552 A.2d 859 (D.C. 1989), which was decided in 1989, before the DCHRA was amended to include the language concerning the tolling of the statute of limitations. *See Kamen*, 505 F.Supp.2d at 75.

Defendant herein has also failed to bring to this Court's attention that *Kamen* was decided without the full panoply of information before it, and attempts to persuade the Court it is correct by neglecting to finish the quote from the DCHRA. See Defendants' Memorandum at 6. Clearly, the language of the Act intends to toll the statute of limitations for a claimant while their complaint is being investigated by the Office of Human Rights.  This provision went into effect after the *Anderson* court failed to recognize the equitable tolling of the statute of limitations on behalf of the claimant.  See D.C. Law 14-189, 2(i), 49 DCR 6523 (Oct. 1 2002).  Understandably this Court relied on the *Anderson* decision in *Kamen* because Plaintiff's Brief in *Kamen* failed to bring the updated code to this Court's attention.  See Case 1:06-cv-01063, Plaintiff's Response in Opposition to Defendant Partial Motion to Dismiss Amended Complaint, p. 4.  Plaintiff's brief in

6

*Kamen* only directs the Court's Attention to *Vitikacs*, which the Court found was inapplicable to the factual circumstances. *Id*.

In *Anderson*, the Plaintiff filed his administrative complaint with OHR only four days before the expiration of the statute of limitations, withdrew his complaint and then filed in the Superior Court. 552 A.2d at 859. Jones however timely filed an administrative complaint with the Office of Human Rights ("OHR") just 80 days after he was terminated by his employer. *See* Compl. at ¶48. After OHR investigated his claim, Jones filed suit in the D.C. Superior Court well within the one year statute of limitations. The Defendant's argument to bar Jones' claim would effectively punish Jones for OHR's lengthy administrative process, which is clearly inapposite to the legislative intent of the tolling provision. Therefore, because the statute protects a Claimant while their claim is pending by tolling the statute of limitations, Jones' claim is not time-barred.

Defendant not only seeks to dismiss Jones' Complaint, but in the alternative, asks the Court to reduce the discriminatory allegations to a mere 15 day period. See Def's Memo on Pts. and Author., p. 10. Defendant contends that any discriminatory action before March 16, 2006 is also time-barred under the one year statute of limitations. See Def's Memo of Pts. and Author., p. 10. Clearly, the statute of limitations is not meant to bar a Claimant from asserting any discrimination suffered before the very last day an employer discriminates against an employee, specifically in a hostile work environment such as the one suffered by Jones. Defendant fails to cite any law to support its assertion otherwise. See Def's Memo on Pts. and Author., p. 9-10.

This Court has already held that, where there is ongoing discriminatory behavior continuing until the time of plaintiff's discharge, the plaintiff's discrimination charge is not time-barred. *Ravinshas v. Karalekas*, 741 F. Supp. 978, 1900 U.S. Dist. LEXIS 10617 (D.D.C. 1990)

(Plaintiff's allegation that initial discrimination under the DCHRA began in 1987 and continued until her termination in 1989 was not time-barred). Moreover, the D.C. Court of Appeals has established the following relevant precedent:

> If an act contributing to the hostile work environment claim occurs within the filing period, the entire time period of the hostile environment may be considered by the court for the purposes of determining liability. It does not matter, for purposes of the District of Columbia Human Rights Act, D.C. Code Ann. § 1-2501 et seq. (1999) (recodified at D.C. Code Ann. § 2-1401.01 et seq. (2001)), that some of the component acts of the hostile work environment fall outside the statutory time period. Even if there are significant gaps in the occurrence of acts constituting the hostile work environment claim, the filing of that claim still may be timely because this type of "unlawful employment practice" cannot be said to occur on any particular day. It occurs over a series of days or perhaps years.

*Lively v. Flexible Packaging Ass'n*, 830 A.2d 874 (D.C. 2003). The Court in *Lively*, further explained that "because a hostile work environment claim is comprised of a series of separate acts that collectively constitute 'one unlawful employment practice,' the trier of fact must focus on 'all the circumstances,' including the frequency of the discriminatory conduct, its severity, whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it interferes with an employee's work performance. *Id*.

Furthermore, to the extent that the policies underlying the statute of limitations are implicated, "if there is any reasonable doubt in a statute of limitations problem, the court will resolve the question in favor of the complaint standing and against the challenge." *Zuurbier v. Medstar Health, Inc.*, 895 A.2d 905, 908 (D.C. 2006), see e.g. *Lively v. Flexible Packaging Ass'n*, 830 A.2d 874, 887 (D.C. 2003) (en banc) (quoting *Simpson v. District of Columbia Office of Human Rights,* 597 A.2d 392, 401 (D.C. 1991). The Courts have established that "what constitutes the accrual of a cause of action is a question of law; the actual date of accrual, however, is a question of fact." *Executive Sandwich*, 749 A.2d at 735 citing *Cevenini v.*

*Archbishop of Washington*, 707 A.2d 768, 770-71 (D.C. 1998). Therefore, because the record is incomplete on the issue of timing, and because Jones has alleged an ongoing hostile work environment, the Court should defer to the trier of fact, and deny Defendant's Motion to Dismiss.

### C. AN OHR INVESTIGATOR'S FINDINGS DO NOT CONSTITUTE A TRIAL-LIKE DETERMINATION THAT PREVENTS PLAINTIFF FROM PURSUING HIS CLAIM IN A COURT OF COMPETENT JURISDICTION

The issue presented in this Motion is whether a finding by OHR of "no probable cause" moves a Claimant's charge outside of the definition of a "contested case," and frees Claimant to bring an action against Respondent without using the D.C. Administrative Procedures Act, D.C. Code §1-150, ("DCAPA").

The statutory language of the DCHRA provides an elaborate procedure which includes investigation, mediation, conciliation and Commission hearings, which may be reviewed by the District of Columbia Court of Appeal upon the filing of a petition for review. See D.C. Code 2 §1403.01 *et seq*. However, not all charges are considered by the Commission, at best there is a non-binding mediation.[2] Absent a settlement agreement, a Claimant's fate is left to an "investigator" who unilaterally determines, based on evidence that has been submitted by both parties, whether there is probable cause to believe that the Respondent has engaged in an unlawful discriminatory practice. See D.C. Code §1-2545 (a). Clearly, the promise of a trial-like proceeding fails to emerge from the current process.

While evidence is gathered by an investigator, the informal requirements of an investigation by OHR are hardly comparable to the "trial-like" requirements of a hearing protected by *Mathews v. Eldridge*, 424 U.S. 319, 47 L. Ed. 2d 18, 96 S. Ct. 893 (1976). There is no opportunity for Claimants to openly cross examine a witness and no opportunity to present

---

[2] None of the evidence, disclosures, or agreed-upon facts are shared with the investigative unit.

9

evidence to a Judge.  See D.C. Code §1-150, Sec. 109 (a)-(e).  It is only this process that precedes an investigator's determination that probable cause does exist, in which case, a hearing is scheduled before the Human Rights Commission.  See D.C. Code §1-2550-2553.  Jones was never afforded such an opportunity.  Jones was issued a finding of 'no probable cause' and then sought reconsideration of the agency finding within 30 days.  His petition for Reconsideration yielded nothing more than an affirmation of the Investigator's determination by the Director of OHR.  See Compl. at 49.

Case law examining this procedure has been divided on the issue of whether a finding of "no probable cause" constitutes a "finding" or a "decision".  Under cases such as *Brown v. Capitol Hill Club*, 425 A.2d 1309 (D.C. 1981), the finding of no probable cause would be a decision, and thus an election of remedies would have been made.  However, since the passage of the D.C. Administrative Practices Act, which introduced the notion of a "contested case[3]," Courts have held that a finding of no probable cause does *not* amount to a "contested case" under the D.C. Administrative Procedures Act, D.C. Code §1-150.  A "preliminary determination of 'no probable cause' does not require a hearing," and "is not an agency decision in a 'contested case.'" *Small v. District of Columbia Office of Human Rights*, 768 A.2d 994, 996 (D.C. 2001).  Because a finding of "no probable cause" removes a Claimant's charge outside of the definition of a "contested case" according to both *Lamont* and *Simpson,* Jones need not have filed a judicial review of OHR's decision under the DCAPA.  *Simpson v. District of Columbia Office of Human*

---

[3] The term "contested case" under the District of Columbia Administrative Procedure Act is defined as the following:

> A proceeding before the Mayor or any agency in which the legal rights, duties or privileges of specific parties are required by law or by constitutional right, to be determined after a hearing before the Mayor or before an agency, but shall not include (A) any matter subject to a subsequent trial of the law and the facts de novo in any court.

See D.C. Code 1-150, Sec. 102(8).

*Rights*, 597 A.2d 392 (D.C. 1991) see e.g. *Lamont v. Rogers*, 479 A.2d 1274, 1276-1278 (D.C. 1984).[4]

Defendant cites *Simpson* to stand for the proposition that a decision by the Office of Human Rights properly disposes of a claimant's action and thus leaves claimant with no further judicial recourse beyond appeal. See Def.'s Memo of Pts. and Author., at p.6. Much like the Plaintiff in *Simpson*, Jones was not granted a hearing or a 'decision' by OHR but merely issued a 'finding' of no probable cause. Compl. at ¶ 50 see e.g. Def's Memo of Pts and Author., at p. 2. The District of Columbia Court of Appeals has explicitly held that a finding by the Office of Human Rights is, "*not* an agency decision." *Simpson,* 597 A.2d 392 at 397. While *Simpson* addressed the Courts jurisdiction to review an appeal of a no probable cause finding, rather than a Claimant's right to pursue their claim against the Respondent directly in court, the Court's rationale applies to Jones as well.

The D.C. Court of Appeals has held that, "we find implausible the notion that the Council of the District of Columbia intended to empower an administrative officer to doom to perpetual oblivion a complaint of unlawful discrimination, without his or her order being subject to any judicial review whatsoever." *Simpson*, 597 A.2d at 398. The Court in *Simpson* recognized the importance of judicial review of OHR's investigations, and in doing so opened the door to protecting a Claimant's challenge of the Respondent in Court. Therefore, Jones' Complaint in D.C. Superior Court against Respondent, GSK, was proper and was not limited to judicial review through the DCAPA.

---

[4] Moreover, had *Brown*, *Hogue v. Roach*, 967 F. Supp. 7 (D.D.C. 1997), or Parker v. *National Corp. For Housing Partnerships*, 697 F. Supp. 5 (D.D.C. 1988) been decided after the passage of the D.C. Administrative Procedures Act, the no probable cause findings would not have been decisions.

## V. **CONCLUSION**

Despite the DCHRA's intent to mirror the Title VII Civil Rights Act of 1964, Defendants argue that unlike the federal civil rights act, Claimants suffering racial discrimination in the District of Columbia are not authorized to bring suit on their own behalf against the Respondent party if the agency fails to do so.  In other words, the District of Columbia, through its DCHRA administrative process actually limits a Plaintiff's right to pursue their rights granted under 42 U.S.C. §2000e, et seq.  In response, Jones echoes the D.C. Court of Appeals and requests that this Court conclude that an administrative officer should not be empowered to "doom to perpetual oblivion" his complaint of unlawful discrimination.

For the reasons stated above, Plaintiffs request that this Court should deny Defendant's Motion to Dismiss Plaintiff's Complaint, and grant Plaintiff's Motion for Remand, as the Plaintiff has always intended that the issues herein be resolved by the District of Columbia Courts.

Dated:  May 9, 2008

Respectfully submitted,

    s//Denise M. Clark
Denise M. Clark (420480)
The Law Office of Denise M. Clark
1250 Connecticut Ave, N.W.
Suite 200
Washington, D.C. 20036
(202) 293-0015
dmclark@benefitcounsel.com

THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| FLOYD JONES )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>GLAXO SMITHLINE )<br>(D/B/A SMITHKLINE BEECHAM, INC.) )<br>)<br>Defendant. )<br>) | Case No. 1:08-cv-00566 (RMC) |

**CERTIFICATE OF SERVICE**

I, Denise M. Clark, certify that on May 9, 2008, a copy of the foregoing *Plaintiff's Memorandum In Opposition to Defendant's Motion to Dismiss* was served via ECF upon Defendant's counsel:

   H. Scott Johnson, Jr.
   Gonzalez, Saggio & Harlan, L.L.P.
   D.C. Bar No. 464415
   1200 G Street, N.W., Suite 800
   Washington, D.C. 20005
   (202) 683-8929


Dated:  May 9, 2008

                                                                                      Respectfully submitted,

                                                                                         s//Denise M. Clark
                                                          Denise M. Clark (420480)
                                                          The Law Office of Denise M. Clark
                                                          1250 Connecticut Ave, N.W.
                                                          Suite 200
                                                          Washington, D.C. 20036
                                                          (202) 293-0015
                                                          dmclark@benefitcounsel.com